[Crim. No. 20869. Nov. 13, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES M. FLANNEL, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Robert P. Mason and Michael G. Millman, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler and Robert H. Philibosian, Chief Assistant Attorneys General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and David D. Salmon, Deputy Attorneys General, for Plaintiff and Respondent.

672

OPINION

**TOBRINER, J.**—Defendant Charles M. Flannel appeals from a judgment of conviction entered on jury verdicts finding him guilty of second degree murder (Pen. Code, § 187), and finding affirmatively on a firearm use allegation (Pen. Code, §§ 1203, subd. (6) and 12022.5). He contends that the court erred in failing to instruct the jury *sua sponte* that defendant's honest but unreasonable belief that he must defend himself from deadly attack negates malice so that the offense is reduced from murder to manslaughter. Defendant also urges that the court should have given requested instructions on diminished capacity (CALJIC Nos. 8.77 and 8.41). We explain our reasons for rejecting these contentions.

California decisions long have acknowledged that factors other than the statutorily suggested "sudden quarrel or heat of passion" can negate malice aforethought, the mental element necessary for murder. Most of these cases, of course, applying the doctrine of diminished capacity, hold that evidence of intoxication, mental defect, or disease can rebut malice. Other decisions, including those of this court, recognize, albeit without full discussion, that one who holds an honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury does not harbor malice and commits no greater offense than manslaughter.

■ Nevertheless, a trial court's duty to instruct *sua sponte* on this defense arises only in a case in which the evidence presents issues relevant to "general principles of law." When a rule applies so seldom that courts have found no occasion to give it full, substantive discussion and California Jury Instructions, Criminal (CALJIC) has not set it out as a standard instruction, we decline to proclaim that, heretofore, the rule expressed a general principle. We conclude that the court did not err in failing to instruct of its own motion.

Defendant also claims that the trial court erred in giving CALJIC No. 4.21, explaining the effect of intoxication on the intent necessary for murder, but in refusing Nos. 8.77 and 8.41 defining diminished capacity and its relationship to manslaughter. Prior decisions of this court establish that a court does not err in rejecting instructions on diminished capacity if no "substantial evidence" supports the defense. In the instant case, defendant consumed relatively small amounts of alcohol over a long period of time, five eyewitnesses testified that the ingestion

of alcohol did not affect defendant's conduct, and defendant's own testimony equivocated on this subject. We conclude that the evidence was not substantial enough to require instructions on diminished capacity. Further, if the trial court erred in giving No. 4.21, the error favored defendant and did not effect prejudice. Therefore, we affirm defendant's conviction.

1. *The facts.*

On June 28, 1976, about 4:15 in the afternoon, defendant shot and killed Charles Daniels. The two men had a history of hostile and violent relations. Daniels objected to defendant's treatment of Daniel's common law daughter, who was defendant's girlfriend, later his wife. Defendant resented Daniels' interference with his romance. Previously, both men had threatened each others' lives. In January 1976 defendant attacked Daniels at a friend's home, kicking Daniels in the chest and head and hitting him with a glass. Rather than prosecute defendant, the district attorney's office held a citation hearing and warned the two men to avoid one another.

On the morning of the killing defendant consumed some four tall cans of beer and a shot or two of whiskey, took his girlfriend shopping and ate lunch. He joined friends in front of a building in Oakland about 2:30 that afternoon. As he talked with friends, defendant shared some beer and whiskey.

About 4 p.m. defendant, observing Daniels approach from nearby, retrieved his gun from the trunk of his car. One friend reassured him that there was no need for a gun, that everybody was "his friend"; when Daniels came close a second time at 4:15 another friend urged defendant to leave in order to prevent trouble. Defendant walked about 12 or 14 feet away but changed his mind and returned to watch Daniels arrive.

Daniels and the group exchanged greetings. Defendant walked up to Daniels and, standing directly in front of him with his hand on the gun in his right front pocket, asked him what was "happening." Daniels graphically told defendant to "stop messing" with him, that they were not supposed to be around each other, and asked him to "get goin'."

Daniels began backing away from the car upon which he had been leaning, waving defendant away with his left hand while his right hand

remained near his back pocket where he was known to have kept his knife. Defendant followed, saying "Was you going to stick me in the side with a knife?" "Come on pull your knife." He then drew the gun from his pocket, extended his arm full length and fired one shot into Daniels' temple from a distance of approximately two feet. As Daniels fell, his switchblade knife flew into the air, landing on the ground where it spun around and popped open. No one observed the knife in Daniels' hand.

Defendant immediately told his friends not to touch Daniels but to "leave him right there." He said, "He pulled a knife on me," adding that Daniels "deserved to be dead, nobody cares." Defendant dropped his weapon and waited until the police arrived.

At trial defendant relied on a theory of self-defense. He testified that Daniels came toward him, grabbed his chest to stabilize him, that Daniels then drew his knife from his back pocket. Defendant was "surprised and scared." Seeing the knife, he pulled his gun out of his front pocket, then jerked away from Daniels and, as Daniels came at him again, he fired. Defendant also testified that he thought he was drunk at the time of the killing.

The trial court instructed the jury on first and second degree murder, the nature and role of malice in murder and manslaughter, the effect of sudden quarrel and heat of passion, and the effect of intoxication on the intent to commit murder (CALJIC No. 4.21).[1] The court refused, however, to instruct generally on diminished capacity and the relationship of diminished capacity to voluntary manslaughter.

2. ▮▮▮ *An honest but unreasonable belief that it is necessary to defend oneself from imminent peril to life or great bodily injury negates malice aforethought, the mental element necessary for murder, so that the chargeable offense is reduced to manslaughter.*

To be exculpated on a theory of self-defense one must have an honest *and* reasonable belief in the need to defend. (Pen. Code, § 197; *Jackson*

---

[1]The court gave the following portion of CALJIC No. 4.21: "If the evidence shows that the defendant was intoxicated at the time of the alleged offense, the jury should consider his state of intoxication in determining if defendant had such specific intent.

"If from all the evidence you have a reasonable doubt whether defendant was capable of forming such specific intent, you must give the defendant the benefit of that doubt and find that he did not have such specific intent."

v. *Superior Court* (1965) 62 Cal.2d 521, 529 [42 Cal.Rptr. 838, 399 P.2d 374]; *People v. Moore* (1954) 43 Cal.2d 517, 526-529 [275 P.2d 485]; *People v. Holt* (1944) 25 Cal.2d 59, 65 [153 P.2d 21].) A bare fear is not enough; "the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone." (Pen. Code, § 198.)

This rule is not questioned here. Rather, the issue is whether a defender has committed murder or manslaughter when his belief, although honestly held, fails to meet the standard of a "reasonable person."

In *People v. Wells* (1949) 33 Cal.2d 330 [202 P.2d 53], a prison inmate charged with assault on an officer, a capital offense requiring malice aforethought, sought to introduce evidence of an abnormal mental condition, not amounting to insanity, which caused him to fear for his personal safety. We stated that if defendant "acted only under the influence of fear of bodily harm, in the belief, *honest though unreasonable,* that he was defending himself from such harm by the use of a necessary amount of force, then defendant, although he would not be guiltless of crime, would not have committed that particular aggravated offense with which he is charged, for the essential element of *'malice aforethought'* would be lacking." (Italics added.) (33 Cal.2d at p. 345.) *Wells,* then, stands for the proposition that as a mental state, malice cannot coexist with such an unreasonable belief; in finding no prejudicial error, we stated that the jury could find malice motivated the action rather than the "influence of honest, mistaken fear," (*id.,* at p. 358) which could have negated malice aforethought.

The same issue as to the legal effect of an unreasonable belief emanating from the need to defend oneself has been faced in cases involving homicide. In *People v. Lewis* (1960) 186 Cal.App.2d 585 [9 Cal.Rptr. 263], defendant was convicted of first degree murder. At trial he relied on a theory of self-defense but requested instructions on manslaughter and lesser included offenses. The trial court refused the latter requests, giving instructions only on self-defense and murder.

In reversing for prejudicial error, the Court of Appeal held that the proper offense in a case of unreasonable belief is manslaughter. The court stated that "Taking the defendant's statements as true the jury could have found that the defendant acted under the influence of fear

which was not reasonably justified by the circumstances. This result is inferable from defendant's statement that he kicked the deceased, who was momentarily stunned, and then ran to the bar where he found the hatchet. A jury might well find that defendant was acting in mortal fear, but that under the circumstances, he, being a younger man, and the deceased in a stunned condition, was *not* acting in a reasonably founded belief of imminent peril to life or great bodily harm. As said in *People* v. *Best* [1936] 13 Cal.App.2d 606, 610: '...If the circumstances are both adequate to raise and sufficient to justify a belief in the necessity to take life in order to save oneself from such a danger, where the belief exists and is acted upon, the homicide is excusable upon a theory of self-defense [citing cases]; while, if the act is committed under the *influence of uncontrollable fear of death or great bodily harm,* caused by the circumstances, but without the presence of all the ingredients necessary to excuse the act on the ground of self-defense, the killing is manslaughter.'" (Italics added.) (186 Cal.App.2d at p. 598.)[2]

At least one other Court of Appeal decision has acknowledged the acceptance of the unreasonable belief principle. In *Roads* v. *Superior Court* (1969) 275 Cal.App.2d 593 [80 Cal.Rptr. 169], the court invalidated a murder indictment for insufficient probable cause. Citing *Lewis,* the court noted that the prosecutor's failure to produce sufficient evidence of murder did not necessarily establish justifiable homicide. "Petitioner fails to note that the evidence may be construed to support a charge of manslaughter on the theory that some of the ingredients necessary to excuse the act as a justifiable homicide may not have been accepted by the grand jury." (275 Cal.App.2d at p. 597, fn. 2.)

Most recently in *People* v. *Sedeno* (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913], this court in dicta affirmed the existence of the unreasonable belief rule. We observed "No instructions were requested and none was given on voluntary manslaughter as an intentional killing committed 'upon a sudden quarrel or heat of passion,' on involuntary manslaughter, on unconsciousness, or on self-defense, or the effect of an unreasonable belief that deadly force was necessary in

---

[2]In the *Best* case, cited with approval in *Lewis,* defendant based his defense on self-defense and the trial judge refused to instruct on the elements of manslaughter, simply stating that manslaughter was included in the offense of murder and giving a form for manslaughter. The Court of Appeal found error, holding that when a manslaughter verdict was possible on a theory of unreasonable belief, all of the elements of the offense must be enumerated.

defense of self." (10 Cal.3d at p. 715.) We went on to emphasize the close relationship between a defendant's claim of self-defense and the unreasonable belief doctrine. "Since there was no evidence that defendant believed he was acting in self-defense, there was likewise no basis for an instruction on the effect of an unreasonable belief that deadly force was necessary in defense of self." (*Id.* at p. 718.)

■ The People contend that the only factors recognized as negating malice, so as to reduce murder to manslaughter, are sudden quarrel or heat of passion upon reasonable provocation (Pen. Code, § 192) or diminished capacity caused by voluntary intoxication, mental disease or mental defect (*People* v. *Conley* (1966) 64 Cal.2d 310 [49 Cal.Rptr. 815, 411 P.2d 911]; *People* v. *Gorshen* (1959) 51 Cal.2d 716 [336 P.2d 492]; *People* v. *Yanikian* (1974) 39 Cal.App.3d 366 [114 Cal.Rptr. 188]).[3] They argue that unreasonable belief does not exist as a partial defense distinct from these two categories. We disagree that the doctrine of unreasonable belief is necessarily bound up with or limited by the concepts of either heat of passion or diminished capacity.

The original source of confusion between unreasonable belief and heat of passion probably lies with the approach taken in *People* v. *Best, supra,* 13 Cal.App.2d 606. Explaining the concept of heat of passion, the court quoted *Commonwealth* v. *Colandro* (1911) 231 Pa. 343 [80 A. 571], to the effect that "'The dividing line between self-defense and this character of manslaughter seems to be the existence, as the moving force, of a reasonable founded belief of imminent peril to life or great bodily harm, as distinguished from the influence of an uncontrollable fear or terror, conceivable as existing, but not reasonably justified by the immediate circumstances.'" (*Id.,* at p. 610.) In *Colandro,* however, the court approved the following jury instruction given in *U.S.* v. *Heath,* 20 D.C. 272: "'So that you have two theories that would reduce the crime to manslaughter: One if the blow was struck in the heat of pas-

---

[3]The People argue here, as they did in the diminished capacity context, that recognition by this court of an "unreasonable belief" type of manslaughter would amount to the creation of a "nonstatutory" crime. We need only reiterate what we said in *People* v. *Mosher* (1969) 1 Cal.3d 379, 385, footnote 1 [82 Cal.Rptr. 379, 461 P.2d 659]: "In *People* v. *Conley*...we pointed out that section 192 had been adopted before the con-·ept of diminished capacity had been developed and therefore that section's enumeration of nonmalicious criminal homicides could not be considered exclusive. We did not thereby create a 'nonstatutory crime,' nor could we do so consistently with Penal Code section 6. Rather we gave effect to the *statutory* definition of manslaughter by recognizing that factors other than sudden quarrel or heat of passion may render a person incapable of harboring malice."

sion...; the other is, if it was struck under an apprehension of danger, but the apprehension of danger was not reasonable....'" (231 Pa. at p. 351.)

The Pennsylvania court, then, utilized a framework of heat of passion which is borrowed by the *Best* court, but the Pennsylvania court did not superimpose the "reasonableness of provocation" requirement of heat of passion upon the honest, but unreasonable belief principle. Possibly for this reason the court in *People v. Lewis, supra,* 186 Cal.App.2d 585 avoided the opportunity to discuss unreasonable belief in terms of heat of passion by citing instead *Best* language free of such reference. (See, *ante,* p. 676.) Finally, in *People v. Sedeno, supra,* 10 Cal.3d 703, 715 we expressly noted the distinct nature of the two principles by using the disjunctive in listing unrequested instructions: "No instructions were requested and none was given on voluntary manslaughter as an intentional killing committed 'upon a sudden quarrel or heat of passion,'... on self-defense, or the effect of an unreasonable belief that deadly force was necessary in defense of self."[4]

To hold that an honest but unreasonable belief in the need to defend mitigates to manslaughter only if accompanied by the heat of passion-type terror expected of a reasonable man renders superfluous the unreasonable belief doctrine expressed in *Best, Lewis, Wells,* and *Sedeno.* For, by definition if an individual kills under circumstances sufficient to provoke a "reasonable person" into believing he faces danger of imminent, deadly attack, complete exculpation follows.

The People urge a similar fusion of the concept of unreasonable belief with that of diminished capacity. *Wells,* it is argued, held only that malice may be negated if an individual's honest belief in the need to defend derives from an incapacitating physical or mental condition. In answer we point out that it is of no moment that Wells, unlike defendant in the instant case, may have had a special "condition" which increased the possibility of genuine fear. We focused, in *Wells,* on "the

---

[4]The confusion is compounded by numerous cases that cite *Best* simply for the proposition that when the facts would warrant a verdict of manslaughter, it is error to refuse instructions on that crime. (See *People v. Jeter* (1964) 60 Cal.2d 671, 675 [36 Cal.Rptr. 323, 388 P.2d 355] (manslaughter due to heat of passion or sudden quarrel); *People v. Miller* (1962) 57 Cal.2d 821, 828 [22 Cal.Rptr. 465, 372 P.2d 297] (nonspecific manslaughter); *People v. Wade* (1959) 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116] (statutory definition of manslaughter); *People v. Mitchell* (1939) 14 Cal.2d 237, 248 [93 P.2d 121] (dissent: heat of passion).)

critical question as to whether defendant's overt act was done with 'malice aforethought'...." As we said in *People* v. *Conley, supra,* 64 Cal.2d 310, 316-317, *Wells* "recognized that malice aforethought is a specific mental state and that a defendant may show that he lacked that mental state when it is an essential element of the offense of which he stands accused."

The nature of malice is central here for "[m]urder is the unlawful killing of a human being...with malice aforethought" (Pen. Code, § 187); "[m]anslaughter is the unlawful killing..., without malice." (Pen. Code, § 192.) In *Conley* we examined the meaning of that mental state. We observed that a person who carefully weighs a course of action, and chooses to kill after considering reasons for and against, is normally capable of comprehending his societal duty to act within the law. "If, *despite such awareness,* he does an act that is likely to cause serious injury or death to another, he exhibits that wanton disregard for human life or antisocial motivation that constitutes malice aforethought." (Italics added.) (*Id.,* p. 322.)

Given this understanding of malice aforethought, we cannot accept the People's claim that an honest belief, if unreasonably held, can be consistent with malice.[5] No matter how the mistaken assessment is made, an individual cannot genuinely perceive the need to repel imminent peril or bodily injury and simultaneously be aware that society expects conformity to a different standard. Where the awareness of society's disapproval begins, an honest belief ends. It is the honest belief of imminent peril that negates malice in a case of complete self-defense; the reasonableness of the belief simply goes to the justification for the killing.

This approach to unreasonable belief expresses the rule at common law. As one scholar notes, "Since manslaughter is a 'catch-all' concept, covering all homicides which are neither murder nor innocent, it logically includes some killings involving other types of mitigation, and such is the rule of the common law. For example, if one man kills another intentionally, under circumstances beyond the scope of innocent homicide, the facts may come so close to justification or excuse that the killing will be classed as voluntary manslaughter rather than murder."

---

[5]The People concede that defendant's honest but unreasonably held belief was relevant to his ability to harbor malice aforethought, but they insist that factor is not determinative.

(Perkins on Criminal Law (2d ed. 1969) pp. 69-70.)[6] Perkins goes on to add that "some legislative enactments have spoken of voluntary manslaughter in terms only of a killing in 'a sudden heat of passion caused by a provocation' and so forth. Such restriction is probably unintentional, being attributable to the fact that this is by far the most common type of mitigation; but it is very unfortunate." (*Id.*, at p. 70.)[7]

California's rule on the effect of an unreasonably held belief in the need to defend is almost universally supported by those legal commentators who have given it consideration. In the words of two scholars it is "the more humane view that, while [the defender] is not innocent of crime, he is nevertheless not guilty of murder; rather, he is guilty of the in-between crime of manslaughter." (LaFave & Scott, Handbook on Criminal Law (1972) p. 397; see also Model Pen. Code, § 201.3, coms. at pp. 40-46 (Tent. Draft No. 9, 1959); Model Pen. Code, § 3.09, coms. at p. 78 (Tent. Draft No. 8, 1958).) In short, the state has no legitimate interest in obtaining a conviction of murder when, by virtue of defendant's unreasonable belief, the jury entertains a reasonable doubt whether defendant harbored malice. Likewise, a defendant has no legitimate interest in complete exculpation when acting outside the range of reasonable behavior. (Cf. *People* v. *St. Martin* (1970) 1 Cal.3d 524 [83 Cal.Rptr. 166, 463 P.2d 390].) The vice is the element of malice; in its absence the level of guilt must decline.

3. ■ *The court did not err in failing to instruct sua sponte that an honest but unreasonable belief in the need to defend negates malice and reduces the offense to manslaughter.*

■ We have set forth the principles controlling the duty of a trial court in criminal cases to instruct *sua sponte.* We have held that even

---

[6]A few commentators would hold that *any* honestly held but mistaken belief exculpates rather than mitigates. (See e.g., Williams, Criminal Law, The General Part (2d ed. 1961) p. 204; Keedy, *Ignorance and Mistake in the Criminal Law* (1908) 22 Harv. L.Rev. 75, 84-85.)

[7]In some jurisdictions, such as California, the courts have given effect to the "lack of malice" requirement of otherwise restrictive manslaughter statutes to uphold the unreasonable belief principle. (See, e.g., *Allison* v. *State* (1904) 74 Ark. 444, 453-454 [86 S.W. 409]; *Hartfield* v. *State* (1936) 176 Miss. 776, 784 [170 So. 531]; *Wood* v. *State* (Okla. 1971) 486 P.2d 750, 752; *Commonwealth* v. *Thompson* (1957) 389 Pa. 382 [133 A.2d 207].) In still other states, legislators have passed statutes specifically providing for manslaughter when an individual holds an unreasonable but honest belief in the need to defend against deadly attack. (See, e.g., Colo. Rev. Stat., § 18-3-105(1)(b) (1978); Ill. Rev. Stat. Ann. ch. 38, § 9-2(b) (1972); Wis. Stat. Ann., § 940.05(2) (1958).)

in the absence of a request, a trial court must instruct on the general principles of law governing the case, i.e., those principles relevant to the issues raised by the evidence, but need not instruct on specific points developed at trial.[8] "The most rational interpretation of the phrase 'general principles of law governing the case' would seem to be as those principles of law *commonly* or closely and openly connected with the facts of the case before the court." (*People* v. *Wade, supra,* 53 Cal.2d 322, 334, italics added; see also *People* v. *Sedeno, supra,* 10 Cal.3d at p. 715, citing *People* v. *St. Martin, supra,* 1 Cal.3d 524, 531; *People* v. *Wilson* (1967) 66 Cal.2d 749, 759 [59 Cal.Rptr. 156, 427 P.2d 820].)

■ We face the question whether the rule that manslaughter is the appropriate penalty for one who kills because he honestly but unreasonably believes he must do so can be termed a "general principle" within the meaning of the foregoing cases. Given the unique nature of this rule, obfuscated by infrequent reference and inadequate elucidation, we conclude that heretofore it could not be so considered.

The "unreasonable belief" principle did not so "commonly or openly connect" with the facts of this case that the trial court should be held to have committed error for failure to instruct without request. In fact, be it California or nationwide, the issue as to *sua sponte* instruction surfaces in surprisingly few homicide cases. The dearth of cases probably stems from the fact that a jury seldom would require notice of the rule in order to decide the given facts; most cases arise from the more common situation governed by the settled principle that an honest and *reasonable* mistake in the need to defend exculpates on the accepted theory of self-defense. Similarly, if a person kills upon a sudden quarrel or heat of passion flowing from circumstances sufficient to provoke a reasonable person the courts recognize that the offense becomes manslaughter.

As a consequence of the dual applicability of rules under the facts of most "honest belief" cases, courts, and indeed the entire legal community, have found little occasion fully to explore the principle. The courts

---

[8]See, e.g., *People* v. *Sedeno, supra,* 10 Cal.3d 703, 715; *People* v. *St. Martin, supra,* 1 Cal.3d 524, 531; *People* v. *Castillo* (1969) 70 Cal.2d 264, 271, footnote 5 [74 Cal.Rptr. 385, 449 P.2d 449]; *People* v. *Henderson* (1963) 60 Cal.2d 482, 490 [35 Cal.Rptr. 77, 386 P.2d 677]; *People* v. *Wade* (1959) 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116]; *People* v. *Jackson* (1963) 59 Cal.2d 375, 379-380 [29 Cal.Rptr. 505, 379 P.2d 937]; *People* v. *Putnam* (1942) 20 Cal.2d 885, 890 [129 P.2d 367]; *People* v. *Warren* (1940) 16 Cal.2d 103, 116-117 [104 P.2d 1024]; Witkin, California Criminal Procedure (1963) Trial, sections 471, 472, pages 477-478.

have been satisfied that discussions of the rule sufficed if it were considered in the context of more pressing concepts, e.g., instructional error (*People* v. *Sedeno, supra,* 10 Cal.3d 703; *People* v. *Lewis, supra,* 186 Cal.App.2d 585), heat of passion (*People* v. *Best, supra,* 13 Cal.App.2d 606), diminished capacity (*People* v. *Wells, supra,* 33 Cal.2d 330), and insufficient probable cause (*Roads* v. *Superior Court, supra,* 275 Cal. App.2d 593). The rule remained indistinct amid the others; it failed to achieve headnote status and it received no standard CALJIC instruction, thus assuring obscurity even in cases of appropriate use.

Nevertheless, defendant urges that *People* v. *Lewis, supra,* 186 Cal. App.2d 585, "stands four square for the proposition that 'unreasonable belief' must be explained *sua sponte.*" In the *Lewis* case, the trial court refused defendant's proposed instruction that informed the jury that it could find him guilty of a lesser included offense. On appeal, the court found defendant's request sufficient to bring the case within the rules governing a court's duty to give *requested* instructions (see *People* v. *Carmen* (1951) 36 Cal.2d 768 [228 P.2d 281]) and reversed for failure to instruct on manslaughter. While the court went on to suggest in dicta that the trial court bore the duty to instruct *sua sponte* on manslaughter, it made no mention of what specific instructions would suffice. Unlike *Lewis,* in the instant case the trial court instructed fully on malice and its relationship to manslaughter as well as the effect of sudden quarrel or heat of passion. These instructions may well have satisfied the ruling of the *Lewis* court.

We do not, however, accept the People's position that a court, after the rendition of this decision, is under no obligation to give *sua sponte* an instruction to the effect an unreasonable belief in the need to defend negates malice aforethought. (E.g., *People* v. *Sears* (1970) 2 Cal.3d 180, 190 [84 Cal.Rptr. 711, 465 P.2d 847].) As we have concluded, it has been legal doctrine, even though infrequently applied in the past, that a genuine but unreasonably held belief negates the mental state of malice aforethought that is necessary for a murder conviction. Accordingly, with the increased judicial cognizance which will follow our exposition here, the unreasonable belief rule, henceforth in cases not yet tried, should be considered a general principle for purposes of jury instruction, no less than the analogous doctrine of diminished capacity. (See, e.g., *People* v. *Sedeno, supra,* 10 Cal.3d 703, 716; *People* v. *Poddar* (1974) 10 Cal.3d 750, 759 [111 Cal.Rptr. 910, 518 P.2d 342]; *People* v. *Mosher* (1969) 1 Cal.3d 379, 390-391 [82 Cal.Rptr. 379, 461 P.2d 659]; *People* v. *Castillo, supra,* 70 Cal.2d 264, 268-270; *People* v.

*Conley, supra,* 64 Cal.2d 310, 315-317; *People v. Henderson, supra,* 60 Cal.2d 482, 491.)[9]

In summary, as we explained in *People v. Wade, supra,* 53 Cal.2d at page 334, the *sua sponte* "rule seems undoubtedly designed to promote the ends of justice by providing some judicial safeguards for defendants from the possible vagaries of ineptness of counsel under the adversary system. Yet the trial court cannot be required to anticipate every possible theory that may fit the facts of the case before it and instruct the jury accordingly. The judge need not fill in every time a litigant or his counsel fails to discover an abstruse but possible theory of the facts." (See also *People v. Sedeno, supra,* 10 Cal.3d 703, 715-717.) Given the undeveloped state of the unreasonable belief rule, we cannot impose upon the instant trial court so formidable a duty as to conceive and concoct an instruction embodying that rule. "The duty of the trial court involves percipience—not ominiscience." (*People v. Cram* (1970) 12 Cal.App.3d 37, 41 [90 Cal.Rptr. 393]; see also *People v. Crosier* (1974) 41 Cal.App.3d 712, 720-721 [116 Cal.Rptr. 467].) In the light of the instant development of the unreasonable belief rule however, we see no reason why in cases not yet tried the court should not be so informed as to give the instruction *sua sponte.*

4. ▮ *The trial court did not err in refusing to give requested instructions on diminished capacity (CALJIC No. 8.77)*[10] *and on*

---

[9]Of course a trial judge need not give, on his own motion, instructions as to the effect of an honest but unreasonable belief in the need to defend unless other requirements for a *sua sponte* instruction are met. (See *People v. Sedeno, supra,* 10 Cal.3d 703, 715-717.)

[10]CALJIC No. 8.77 reads in part: "If you find from the evidence that at the time the alleged crime was committed, the defendant had substantially reduced mental capacity, whether caused by mental illness, mental defect, intoxication, or any other cause, you must consider what effect, if any, this diminished capacity had on the defendant's ability to form any of the specific mental states that are essential elements of murder and voluntary manslaughter....

"Also, if you find that the defendant's mental capacity was diminished to the extent that you have a reasonable doubt whether he was able to form the mental states constituting either express or implied malice aforethought, you cannot find him guilty of murder of either the first or second degree....

"Furthermore, if you find that as a result of mental illness, mental defect, or intoxication, his mental capacity was diminished to the extent that he neither harbored malice aforethought nor had an intent to kill at the time the alleged crime was committed, you cannot find him guilty of either murder or voluntary manslaughter."

*the relationship between diminished capacity and voluntary man-*
*slaughter (CALJIC No. 8.41.)*[11]

We have previously enunciated the principles governing the duty of a trial court to give requested instructions. In *People v. Carmen, supra,* 36 Cal.2d 768, 773-774, we noted that "it is reversible error to refuse a manslaughter instruction in a case where murder is charged, and the evidence *would warrant a conviction of manslaughter.*" (Italics added.) We found it, "'*elementary* that the court should instruct the jury upon every material question upon which there is *any evidence deserving of any consideration whatever.*'" (Original italics.) (*Id.,* at p. 773, quoting *People v. Burns,* 88 Cal.App.2d 867, 871 [200 P.2d 134].) We went on to warn that "'[t]he fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon. [Citations.] That is a question within the exclusive province of the jury.'" (Italics omitted.) (*Id.*) "As an obvious corollary, where there is 'no substantial evidence of diminished capacity' the court does not err in refusing to give instructions based on that defense." (*People v. Mayberry* (1975) 15 Cal.3d 143, 151 [125 Cal.Rptr. 745, 542 P.2d 1337].)

■ In substance when diminished capacity is at issue a trial court first evaluates the evidence. If defendant proffers evidence enough to deserve consideration by the jury, i.e., "evidence from which a jury composed of reasonable men could have concluded that there was diminished capacity sufficient to negate the requisite criminal intent" (*People v. Carr* (1972) 8 Cal.3d 287, 294 [104 Cal.Rptr. 705, 502 P.2d 513]), the court must so instruct. A trial court should not, however, measure the substantiality of the evidence by undertaking to weigh the credibility of the witnesses, a task exclusively relegated to the jury. If the evidence should prove minimal and insubstantial, however, the court need not instruct on its effect.[12] (*People v. Mayberry, supra,* 15 Cal.3d

---

[11]CALJIC No. 8.41 reads: "Voluntary manslaughter is the intentional and unlawful killing of a human being without malice aforethought.

"There is no malice aforethought [if the killing occurred upon a sudden quarrel or heat of passion or] if the evidence shows that due to diminished capacity caused by mental illness, mental defect, or intoxication, the defendant did not have the capacity to form the mental state constituting malice aforethought, even though the killing be intentional, voluntary, deliberate, premeditated, and unprovoked."

[12]Many cases cite, often without elaboration, language in *Carmen, supra,* 36 Cal.2d 768, or in *People v. Modesto* (1963) 59 Cal.2d 722, 729 [31 Cal.Rptr. 225, 382 P.2d 33], to the effect that jury instructions must be given whenever *any* evidence is presented, no matter how weak. To the extent that a decision of any court interprets these cases to require instructions without evidence substantial enough to merit consideration, it is disapproved. (See, e.g., *People v. Thornton* (1974) 11 Cal.3d 738, 769, fn. 20 [114 Cal.Rptr. 467, 523 P.2d 267]; *People v. Sedeno, supra,* 10 Cal.3d 703,

143, 151; *People* v. *Carr, supra,* 8 Cal.3d at p. 294; *People* v. *Harris* (1970) 7 Cal.App.3d 922, 926 [87 Cal.Rptr. 46].) In other words, "[t]he court should instruct the jury on every theory of the case, but only to the extent each is supported by substantial evidence." (48 Cal. Jur.2d, Trial, § 467, p. 479.) We likewise note that "Doubts as to the sufficiency of the evidence to warrant instructions should be resolved in favor of the accused." (*People* v. *Wilson* (1967) 66 Cal.2d 749, 763 [59 Cal.Rptr. 156, 427 P.2d 820]; see also *People* v. *Rodriguez* (1969) 274 Cal.App.2d 487, 497 [79 Cal.Rptr. 187].)

██ Applying the above rules to the evidence in the instant case, we are of the opinion that defendant presented no substantial evidence of intoxication. First, defendant consumed relatively small amounts of alcohol over a long period of time. In the early morning, somewhere about 10 a.m., defendant drank about four tall cans of beer and a shot or two of gin. He then went shopping with his girlfriend, and ate a sandwich for lunch. Between 2:30 and 4 that afternoon defendant drank a couple of beers and a shot of whiskey. In *People* v. *Bandhauer, supra,*66 Cal.2d 524, 528 [58 Cal.Rptr. 332, 426 P.2d 900], we found evidence of intoxication insufficient to require an instruction on diminished capacity if the defendant had "six or seven beers during the six hours he was at various bars . . ., and he did not appear to be intoxicated." Similarly, in *People* v. *Spencer, supra,* 60 Cal.2d at pages 88-89, we found evidence of intoxication "minimal," and therefore erroneous instructions immaterial, when defendant testified that he had had "'about three shots of whiskey' and some beer, and was 'pretty well plastered.'" Having observed defendant's behavior, the arresting police officers, however, testified that defendant was not under the influence of intoxicating liquor.

Second, all five eyewitnesses to the shooting—all friends of defendant presumably acquainted with his demeanor—testified variously that defendant "wasn't drunk," he was "acting normal," he was not acting "goofy," the alcohol had "no effect." Two police officers arriving at the scene testified that they could recall nothing indicating the defendant

---

716-717; *People* v. *Cantrell* (1973) 8 Cal.3d 672, 685 [105 Cal.Rptr. 792, 504 P.2d 1256].) To hold otherwise would mandate instructions whenever, for example, evidence of *any* consumption of alcohol was offered, a result contrary to existing authority. (See *People* v. *Carr, supra,* 8 Cal.3d 287, 294; *People* v. *Bandhauer* (1967) 66 Cal.2d 524, 528 [58 Cal.Rptr. 332, 426 P.2d 900]; *People* v. *Spencer* (1963) 60 Cal.2d 64, 87 [31 Cal.Rptr. 782, 383 P.2d 134], cert. den. (1964) 377 U.S. 1007 [12 L.Ed.2d 1055, 84 S.Ct. 1924]; *People* v. *Miller, supra,* 57 Cal.2d 821, 830-831; *People* v. *Small* (1970) 7 Cal.App.3d 347, 356 [86 Cal.Rptr. 478].)

was "under the influence." This showing of sobriety contrasts with the presentation in other cases in which a defendant's claim of intoxication finds corroboration by independent witnesses. (See, e.g., *People v. Stevenson* (1978) 79 Cal.App.3d 976, 982 [145 Cal.Rptr. 301] (friend testified defendant "looked like he had been drinking"); *People v. Vasquez* (1972) 29 Cal.App.3d 81 [105 Cal.Rptr. 181] (wife testified that she argued with defendant over his drinking and that she took over the wheel because he was too drunk to drive.)

Finally, defendant's testimony regarding his own intoxication is equivocal; "normally I think I wouldn't have reacted like I did. Maybe...I wasn't normal. I was drunk, I would suppose"; defendant did not know what he was doing, not "totally," it "could be possible" that otherwise he would have walked away from Daniels. In short, the evidence shows no diminished capacity due to intoxication; rather, as defense counsel stated in his closing argument to the jury, "Mr. Flannel thought that the effect on him might have been in the form of his willingness to stay there rather than to run."

Based on the evidence in the record, the trial court properly determined that the evidence did not suffice to merit the jury's consideration of diminished capacity. As the Court of Appeal below stated "Insofar as the instruction given could have been considered by the jury on the question of defendant's reduced ability to formulate the necessary intent [CALJIC No. 4.21], any error occasioned thereby was favorable rather than detrimental; such error, in the absence of demonstrated prejudice, does not constitute grounds for reversal. (See *People v. Cisneros* (1973) 34 Cal.App.3d 399, 426-428.)"[13]

The judgment is affirmed.

Mosk, J., and Newman, J., concurred.

Clark, J., Richardson, J., and Manuel, J., concurred in the judgment.

On January 24, 1980, the following concurring opinion was filed:

**RICHARDSON, J.**—I concur in the judgment and in the lead opinion of Justice Tobriner, except to the extent it announces the new rule that

---

[13]Because we affirm the decision in the instant case, we need not consider the People's argument that CALJIC No. 4.21, quoted, *ante,* footnote 1, serves a purpose different from that of No. 8.77, *ante,* footnote 10, and No. 8.41, *ante,* footnote 11, and that in some circumstances only No. 4.21 may be required.

the principles of *sua sponte* instruction shall apply in future cases to the rule that an honest but unreasonable belief in the need to defend oneself negates malice aforethought and reduces the offense to manslaughter. In my view, we need not and should not reach this question in the present case.

Clark, J., and Manuel, J., concurred.

**BIRD, C. J.,** Concurring and Dissenting.—I respectfully dissent from that portion of the lead opinion which states it was not error to fail to instruct on diminished capacity.[1]

The law is clear that a criminal defendant has a constitutional right to have a jury determine every material issue presented by the evidence. (See *People* v. *Sedeno, supra*, 10 Cal.3d 703, 720-721 [112 Cal.Rptr. 1, 518 P.2d 913]; *People* v. *Modesto* (1963) 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33].) Appellant was entitled to the requested diminished capacity instructions under the corollary rule that a trial court "'should instruct the jury upon every material question upon which there *is any evidence deserving of any consideration whatever.* [Citations.] The fact that the evidence may not be of a character to inspire belief does not authorize the refusal of an instruction based thereon. [Citations.] That is a question within the exclusive province of the jury. However incredible the testimony of a defendant may be he is entitled to an instruction based upon the hypothesis that it is entirely true.'" (*People* v. *Carmen* (1951) 36 Cal.2d 768, 773 [228 P.2d 281]; italics in original; original italics in the last two sentences omitted.)

Today, the lead opinion states that appellant had no right to any jury instructions on diminished capacity since he "presented no substantial evidence of intoxication." (Lead opn., *ante,* at p. 685.) Although *People* v. *Carmen, supra,* 36 Cal.2d at page 773 is cited with apparent approv-

---

[1] I concur in parts 1 and 2 of the lead opinion, but I have serious doubts concerning part 3. A trial court's obligation to instruct *sua sponte* turns not upon the frequency with which a defense appears in the case law, but upon the clarity of the legal principle involved and its manifest application to a given set of facts. (See *People* v. *Sedeno* (1974) 10 Cal.3d 703, 715-717.) In part 2 of their opinion, the justices joining in the lead opinion endorse the concept that an unreasonable belief in the need to act in self-defense may negate the malice necessary for conviction for murder. Since this principle is "closely and openly connected with the facts" of this case, the trial court had an affirmative obligation to instruct *sua sponte* on this defense. (*Id.,* at p. 716.)

However, I do agree with that portion of part 3 which requires that such instructions be given *sua sponte* in future cases.

al, the lead opinion concludes that the evidence of intoxication in this case is unworthy of "any consideration whatever" by the jury. (*Ibid.*)

The lead opinion has confused two concepts. Substantial evidence is the standard applied in criminal appeals when a court must decide whether the evidence produced at trial was sufficient to prove the defendant's *guilt beyond a reasonable doubt.* That is *not* the issue in this case. Here, the jury must be given the opportunity to *consider* his defense. The accused need not prove that defense beyond a reasonable doubt but must show there is a reasonable doubt as to his guilt. Clearly, the substantial evidence standard used in considering the validity of a conviction on appeal is totally inappropriate as a standard for determining when an accused is entitled to instructions on a defense of diminished capacity.[2]

The effect of the lead opinion's "substantial evidence" standard is to take away the proper role of the jury since it encourages judges to rule on the ultimate merits of a defense rather than determining whether the evidence is sufficient to raise an arguable defense.

This case is a vivid example of the unfortunate results that will be produced if today's decision is treated by subsequent courts as anything other than an aberration. In the six-hour period preceding the commission of the homicide, appellant consumed four tall beers, two shots of gin, one shot of whiskey, and at least two more beers. Assuming appellant to be a man of normal size, this consumption of alcohol would suggest a blood alcohol level at the time of the shooting of about 0.10 percent.[3] In this state, all drivers are presumed to be under the influence of alcohol at that level. (Veh. Code, § 23126, subd., (3).)

---

[2]It is a non sequitur to argue that to adhere to the rule that a request for instruction must be granted whenever there is any evidence of diminished capacity, no matter how weak, "would mandate instructions whenever...evidence of *any* consumption of alcohol was offered, a result contrary to existing authority." (Lead opn., *ante,* at p. 685, fn. 12.) *People* v. *Miller* (1962) 57 Cal.2d 821 [22 Cal.Rptr. 465, 372 P.2d 297], demonstrates that in some cases evidence of intoxication is not sufficient to raise a defense of diminished capacity. Moreover, *People* v. *Carr* (1972) 8 Cal.3d 287 [104 Cal.Rptr. 705, 502 P.2d 513], shows that evidence of intoxication may not be *relevant* to a claim of diminished capacity. There, the sole evidence of intoxication was the defendant's testimony that his drinking "gave him courage to carry out his criminal design." (*Id.,* at p. 295.) Instruction on diminished capacity was held to have been properly refused because "[s]uch evidence in no way negates his [the defendant's] intent to commit his acts or his awareness of their wrongful nature." (*Ibid.*)

[3]This estimate was reached in the following manner. Each normal sized drink of alcohol, when absorbed through the gastrointestinal tract, results in about a 0.02 percent

Clearly, the amount of drinking in this case amounts to evidence worthy of consideration by a jury on the question of diminished capacity and warranted instructions on diminished capacity.[4] While no expert testified as to the effect of this level of intoxication on appellant's mental capacities, alcohol is a drug familiar to many jurors, and its effects could have been assessed by them.

The lead opinion relies on appellant's trial testimony to justify the refusal to give any instructions concerning appellant's diminished capacity. (Lead opn., *ante,* at p. 686.) The testimony given at the trial is worthy of note. "Did you feel any effect of the alcohol you had consumed earlier that day?" "Yes, I was." "You weren't drunk, were you?" "Somewhat—I wasn't normal. I was drunk, I would suppose." Despite my colleagues stern warning that courts should not undertake to weigh the credibility of witnesses (lead opn., *ante*, at p. 684), they commit this very error when they find this evidence detracts from the defense of diminished capacity because it is "equivocal." (Lead opn., *ante*, at p. 686.) They overlooked the fact that appellant's testimony was not contradicted. If all questions as to credibility are resolved in appellant's favor, his testimony stands for the simple proposition that he was "drunk" at the time of the homicide. Giving appellant the benefit of the doubt as the lead opinion concedes must be done (lead opn., *ante*, at p. 685), it is impossible to conclude that a jury composed of reasonable persons could not have found that appellant acted without the malice necessary for a conviction of murder.

---

increase in the blood alcohol level in the average person. The body tends to eliminate alcohol at a rate of about 0.018 percent per hour. (See, e.g., Alcohol and the Impaired Driver, A.M.A., Com. on Medicolegal Problems (1970).)

Thus, assuming appellant to be a man of average stature, his blood alcohol at 4 p.m. can be computed by multiplying 0.02 percent by the number of normal size drinks [treating the "tall beers" as 1⅓ of a "normal" beer, appellant had the equivalent of 10⅓ drinks]. The product of the duration of the drinking period (six hours) multiplied by the clearance rate (0.018 percent) must be subtracted from the first figure.

[4] I would disapprove the decision in *People v. Bandhauer* (1967) 66 Cal.2d 524 [58 Cal.Rptr. 332, 426 P.2d 900], since it appears to be an isolated aberration. Significantly, the majority in that case cited no authority for their holding that the defendant's consumption of "six or seven beers" in the six hours immediately preceeding the crime did not suffice to raise a material defense of diminished capacity. (*Id.,* at p. 528.) Adopting the views stated in the dissenting opinion of Justice Peters (*id.,* at pp. 531-533), I am of the view that the denial of the instruction requested in that case deprived the defendant of his constitutional right to have the jury and not the trial court decide the merit of this defense. The difference between the weight of the evidence relied upon in *Bandhauer* and that in *People v. Miller, supra,* 57 Cal.2d 821, illustrates the gap between evidence sufficient to raise a defense of diminished capacity and that which is insufficient.

The lead opinion's view of the evidence is at odds with that taken by the trial court. Instructions were given on the effect that appellant's intoxication may have had on his ability to formulate an intent to kill and to premeditate his actions. Indeed, the evidence of intoxication which the lead opinion now rejects as insubstantial may well account for the jury's refusal to convict appellant of first degree murder.

This court cannot find as a matter of law that appellant's testimony that he was "drunk" was a lie or established that he was not sufficiently intoxicated to be unaware of the wrongfulness of his acts or to conform his conduct to social norms. I agree with the trial court that this evidence raised material issues of intent and premeditation. However, the trial court should have instructed the jury on the defense of diminished capacity as it applied to the element of malice.[5] Under the mandate of *People* v. *Sedeno, supra,* 10 Cal.3d 703, this failure to instruct on a material issue requires a reversal.

Appellant's petition for a rehearing was denied January 24, 1980, and the concurring and dissenting opinion was modified to read as printed above. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.

---

[5]Whatever the basis for the verdict reached, the trial court could not reasonably have found the evidence of intoxication to raise a material issue with respect to one aspect of appellant's mental state but not another.