[No. D010283. Fourth Dist., Div. One. Feb. 13, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
TIEN MINH VU, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II through V.

**COUNSEL**

Joel M. Kriger, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Rudolf Corona, Jr., and Maxine P. Cutler, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WIENER, Acting P. J.**—Charged with the attempted murder of Cong Phan, defendant Tien Minh Vu appeals from a judgment of conviction after a jury found him guilty of attempted voluntary manslaughter (Pen. Code, §§ 192, subd. (a), 664[2]) and assault with a firearm (§ 245, subd. (a)(2). Accompanying firearm use (§ 12022.5) and great bodily injury (§ 12022.7) allegations were found to be true. Defendant makes various contentions of instructional, evidentiary and sentencing error. We generally reject his arguments or, if error, conclude it was not prejudicial. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The events in this case arise out of the somewhat volatile relationship between defendant, his girlfriend Hang Nguyen and Nguyen's husband, Hai Vu (no relationship to the defendant).[3] Beginning in early 1988, Nguyen began moving back and forth between her husband's home and defendant's apartment. The arrangement was not amicable. There was an altercation between defendant and Vu at a Vietnamese market in late June followed by various threats, counterthreats and perceived threats.

On July 20, Vu asked the eventual victim, Cong Phan, to accompany him to defendant's apartment to pick up Nguyen.[4] According to Vu, he had arranged with defendant to pick up Nguyen at that time. According to defendant and Nguyen, Vu's arrival was unexpected. Nguyen did not want to go with Vu but agreed to do so in order to avoid a confrontation. She told defendant to come over to Vu's apartment later.

After about 15 minutes, defendant went to Vu's apartment armed with a handgun. When defendant knocked and announced himself, Vu was fearful of a fight and refused to answer the door. Defendant saw Cong Phan talking with friends outside a neighboring apartment and told him to tell Vu to let him in. Phan replied it was defendant's business, not his. Defendant then asked Phan to accompany him to the alley adjacent to the apartment building so they could talk. As the two men entered the alley, defendant turned, pulled the handgun from his pants pocket and fired a single shot which

---

[2] All statutory references are to the Penal Code unless otherwise indicated.

[3] Because of the identical last names, we depart from our usual practice and refer to Tien Minh Vu throughout this opinion as "defendant."

[4] There was some evidence to indicate Vu and Phan had been drinking before arriving at defendant's apartment.

struck Phan in the neck.[5] At about the time he was shot, Phan heard defendant say, "Don't oppose me" or "Don't approach me."

Defendant was arrested a short time later. The .25-caliber pistol used to shoot Phan was found nearby. He admitted the shooting but said it was in self-defense. At trial, he claimed to have heard someone call out to "Take a gun and grenade out" as he stood at the door to Vu's apartment. Fearing violence, he started to leave the apartment building. Defendant denied asking Phan to come to the alley to talk with him. He asserted instead that Phan followed him into the alley along with another man. Defendant told Phan, "Don't approach me." He again heard someone refer to "tak[ing] a gun out." Fearing he would be shot, he turned and shot Cong Phan.

## DISCUSSION

### I

The defense sought to introduce the testimony of a psychologist, Dr. Faye Girsch. Girsch proposed to testify in general terms about the effects of stress and expectancy on perception. Although Girsch was not prepared to offer an opinion on the facts of this case, her testimony was designed to show that defendant's actual perception of events may have differed from reality due to stress and preconceived expectations about what might happen.

The court ruled the testimony inadmissible. It first noted that "[t]he phenomena of stress, perception and expectancy and those matters or studies relied on to give opinions in that area do not appear to the court to be sufficiently reliable or valid to permit such expert testimony." The court also questioned Dr. Girsch's credentials because she was basing her testimony on her reading about the work of others rather than her own independent research. Finally, the court suggested there was no prejudice to the defendant because counsel could argue the same factors Girsch was going to present in her testimony.

 Defendant relies principally on *People* v. *McDonald* (1984) 37 Cal.3d 351 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011] in support of his contention that the testimony should have been admitted. In *McDonald*, the Supreme Court approved the admission of expert testimony to educate the jury on psychological factors which affect eyewitness identification. The effect of stress and expectations on perception was

---

[5] A doctor testified based on the entrance and exit wounds that Phan must have been falling or trying to get away from defendant at the time he was shot.

among the factors about which the expert proposed to testify. (*Id*. at p. 361.)

In view of the Supreme Court's conclusions in *McDonald*, we cannot agree with the first reason offered by the trial court to support the exclusion of Dr. Girsch's testimony. If experts can testify about the effects of expectations and stress on a witness's perception for the purpose of showing that an identification may have been mistaken, similar testimony is also admissible to show the perceptions of a defendant claiming self-defense may also have been affected by expectations and stress.

*McDonald* also casts doubt on the second reason offered by the trial court. The Supreme Court noted that the expert's testimony in that case "would have related primarily to matters of fact: the *contents* of eyewitness identification studies reported in the professional literature . . . ." (37 Cal.3d at p. 366, italics in original.) This is precisely the sort of testimony Dr. Girsch was attempting to provide. While it is true the expert in *McDonald* had done some experimental research on the subject himself (*id*. at p. 361), his testimony was not limited to his personal studies. ■ Where an expert seeks to provide factual testimony—as distinguished from opinion testimony—the primary measure of his or her qualifications should be the ability to understand the factual material and interpret it for the jury. Where an expert is asked to interpret studies or research in a particular field, it is not necessary that the expert has personally conducted similar studies or research.

■ The trial court's suggestion that the exclusion of the evidence would not prejudice defendant was presumably meant to indicate that counsel was free to argue to the jury the possible effects of stress and expectancy. While this may be true, a lawyer's argument standing alone is not an adequate substitute for a similar argument based on factual testimony by an established expert explaining to the jury the results of professional research. It is that testimony which would allow counsel to make a forceful argument applying the testimony to the facts of the case.

We therefore conclude Dr. Girsch's testimony was admissible in this case. It was relevant, principally, because defendant claimed he honestly believed Cong Phan was trying to hurt him. The research Dr. Girsch sought to refer to would have supported defendant's argument that stress and expectations caused him to honestly perceive a threat where no threat was intended or apparent to others at the scene.

Here, however, the jury found the defendant guilty of attempted voluntary manslaughter, rejecting a charge of attempted murder. Relying on a

theory of imperfect self-defense (see *People* v. *Flannel* (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1]), they necessarily accepted defendant's testimony that he believed himself threatened, but concluded such belief was not objectively reasonable. Thus, while we believe the court erred in excluding the evidence, the jury's verdict convinces us that the error did not prejudice defendant.

Defendant suggests Dr. Girsch's testimony also supported his argument that he *reasonably* believed he was in danger. He asserts the excluded evidence would have shown—or at least supported an argument—that reasonable people with prior expectations and subject to stress make reasonable mistakes. Even if defendant were correct, however, we do not think it is reasonably probable admission of the testimony would have affected the verdict. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) This is not a case in which the defendant saw the victim do something which he misinterpreted as a threatening move. Defendant came to Hai Vu's apartment armed with a handgun. The victim, Cong Phan, and an independent witness testified that defendant told Phan to meet him in the alley. Defendant's contrary testimony was impeached by his prior inconsistent statement to police. While historical events may have caused defendant to perceive Cong Phan as a threat, we think it is highly unlikely that the jury would have found such a belief to be reasonable.

II-V*

. . . . . . . . . . . . . . . . . . . . .

DISPOSITION

Judgment affirmed.

Work, J., and Froehlich, J., concurred.

---

* See footnote 1, *ante,* page 810.