Filed 1/13/14  P. v. Osborne CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RAYMOND HURDLE OSBORNE,<br><br>    Defendant and Appellant. | B247119<br><br>(Los Angeles County<br>Super. Ct. No. YA080105) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Scott T. Millington, Judge.  Affirmed with directions.

Jean Ballantine, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Robert M. Snider, Deputy Attorneys General, for Plaintiff and Respondent.

## I.  INTRODUCTION

A jury convicted defendant, Raymond Hurdle Osborne, of deadly weapon assault (Pen. Code, § 245, subd. (a)(1))[1] and misdemeanor vandalism (§ 594, subd. (a)). Defendant was sentenced to 3 years in state prison.  We affirm the judgment.  We direct the clerk of the superior court, upon remittitur issuance, to amend the abstract of judgment and deliver a copy to the Department of Corrections and Rehabilitation.

## II.  EVIDENCE AND ARGUMENT

Defendant and the victim, Rodney Ballard, had a history of animosity stemming from a transaction involving an automobile repair.  On January 7, 2011, they encountered each other by chance in a grocery store parking lot.  The encounter culminated in the aggravated assault and vandalism charges against defendant.

According to Mr. Ballard, defendant was the aggressor.  Defendant challenged Mr. Ballard to a fight.  Mr. Ballard rode away on his motorcycle.  Defendant got into his truck.  Defendant chased Mr. Ballard.  Defendant reached out through the truck's window and swung a flashlight at Mr. Ballard.   Mr. Ballard finally arrived at his apartment complex.  Defendant pulled in behind Mr. Ballard.  Defendant approached and swung the flashlight at Mr. Ballard.  The blow landed on Mr. Ballard's right shoulder, fracturing his shoulder blade.  Mr. Ballard tried unsuccessfully to get away.  Mr. Ballard tripped and fell to the ground.  Defendant kicked Mr. Ballard in the side and in the head.  Mr. Ballard suffered a gash to the back of his scalp requiring 10 stitches.  Defendant also lacerated Mr. Ballard's right eyebrow area.  That wound also required 10 stitches.  Mr. Ballard was frightened and did not fight back.  Defendant walked away.  Paramedics were summoned and took Mr. Ballard to the hospital.

---

[1]  All further statutory references are to the Penal Code except where otherwise noted.

Before leaving the scene, defendant vandalized Mr. Ballard's motorcycle with the flashlight. A neighbor, Jose Perez, saw defendant "going after" Mr. Ballard's motorcycle with a flashlight. Mr. Ballard, whose face was bloody, was saying: "Wasn't that enough? Just go." Defendant appeared to be very angry. Mr. Perez never saw Mr. Ballard attack, punch or kick defendant.

Another neighbor, Geovany Teran, witnessed portions of the physical altercation between defendant and Mr. Ballard. Mr. Teran saw defendant swing a flashlight at Mr. Ballard several times. Mr. Ballard fell to the ground and tried to cover himself. Defendant then struck Mr. Ballard with the flashlight. Mr. Ballard's motorcycle helmet flew off. Mr. Ballard never took a swing at defendant. At no time did Mr. Ternan see Mr. Ballard make an aggressive move towards defendant.

Defendant testified Mr. Ballard was the aggressor. Defendant testified they met in the grocery store parking lot when, "[Mr. Ballard] rolled over to me on his motorcycle." Mr. Ballard began to threaten defendant. Defendant testified, "He was using profane language and making threats along the lines of . . . what he was gonna do . . . ." Defendant said to Mr. Ballard: "I know you vandalized my car. Can we just . . . get away from this stuff and let it go[?]" Mr. Ballard responded: "You know about that? I'll pay for it." Mr. Ballard agreed to pay defendant for the damage. Mr. Ballard said to follow him home. Defendant followed Mr. Ballard home. Defendant denied hitting Mr. Ballard with a flashlight at any time. Defendant did not try to run Mr. Ballard down. Eventually they arrived at Mr. Ballard's home. Defendant parked and walked over to Mr. Ballard. Mr. Ballard had gotten off his motorcycle and was taking off his gloves. He still had his helmet on.

Mr. Ballard spoke in an angry fashion. Then, "out of nowhere," Mr. Ballard "clobbered" defendant. Mr. Ballard admitted using his motorcycle helmet to strike back. Mr. Ballard struck the left side of defendant's face. Mr. Ballard grabbed defendant by the hair. This caused defendant to panic. Defendant grabbed Mr. Ballard by the hand. Defendant admitted taking Mr. Ballard's helmet. And defendant admitted striking Mr. Ballard twice in the head with the helmet. Defendant also used a hand to hit Mr. Ballard.

3

Mr. Ballard was holding defendant by the hair. Mr. Ballard was trying to stop this. As they struggled, defendant once again struck Mr. Ballard with the helmet. Then Mr. Ballard tripped and fell backwards. Defendant fell to the ground with the helmet in his left hand. As he fell, defendant dropped the helmet. Defendant described how the two men fell: "He had his hands in my hair and my hand is here. And, so, we were going backwards. His feet got caught up and he fell. I saw his feet because I'm looking down like this and I could feel him going back. I came into him real close." Mr. Ballard fell to the ground. Thereupon, defendant's shoulder landed in Mr. Ballard's sternum. Mr. Ballard's head bounced twice against the concrete. Mr. Ballard let go of defendant's hair as they fell. The fight ended.

Defendant denied kicking Mr. Ballard. Defendant retreated down the driveway. Mr. Ballard threw the motorcycle helmet at defendant. It fell nearby. Defendant admitted he took out his frustration on the motorcycle. He hit the motorcycle several times with the helmet. He did so because he was enraged. Defendant testified he was not proud of what he did.

Defendant was represented by Deputy Alternate Public Defender Robert Cortes. Mr. Cortes argued defendant acted in self defense: "Someone slams a helmet in your face and grabs your hair, starts pulling your hair, you're in imminent danger. Someone is gonna kick your butt. It is reasonable to believe that? Yeah. Defendant reasonably believed that immediate use of force was necessary to defend himself against that danger. [¶] After he had been coldcocked, his hair was being pulled, he was being dragged, he's dazed, sees stars, maintains he's temporarily blinded, he attempts to do whatever he can to defend himself. Grabs the helmet as he's being led, and his concern is not to have him start pulling chunks out of his hair. He uses the helmet, starts smashing anything he can to make the attacker stop. [¶] Lastly, he uses no more force than was reasonably necessary to disable the attacker. Once Ballard trips, head bounces off the concrete twice, he lets him go and walks away. This was confirmed even by Ballard. His hair was no longer tangled in his hand. He was free to leave, and he walked away. He used enough force to stop the attacker."

4

## III.  DISCUSSION

### A.  Lesser Included Offense Instruction

Defendant asserts it was prejudicial error not to instruct sua sponte on simple assault as a lesser included offense.  We find no error.  A trial court has a sua sponte duty to instruct on lesser included offenses whenever substantial evidence raises a question whether all the elements of the charged offense are present.  (*People v. Smith* (2013) 57 Cal.4th 232, 239; *People v. Lewis* (2001) 25 Cal.4th 610, 645; *People v. Breverman* (1998) 19 Cal.4th 142, 154, 162.)  In the lesser included offense context, our Supreme Court has held:  "Substantial evidence is evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive."  (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8; accord, *People v. Cunningham* (2001) 25 Cal.4th 926, 1008.)  The duty does not exist, however, when the evidence is such that if the defendant is guilty at all, he is guilty of the greater offense (*People v. Smith, supra,* 57 Cal.4th at p. 240; *People v. Cunningham, supra,* 25 Cal.4th at p. 1008); that is, "when there is no evidence that the offense was less than that charged."  (*People v. Breverman, supra,* 19 Cal.4th at p. 154.)  Section 240 defines a simple assault, "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  An aggravated assault includes a violation of section 240 but with a deadly weapon such as a motorcycle helmet.  (§ 245, subd. (a)(1).)  Simple assault is a lesser included offense of assault with a deadly weapon.  (*People v. Carmen* (1951) 36 Cal.2d 768, 775, disapproved on another point in *People v. Flannel* (1979) 25 Cal.3d 668, 684, fn. 12; *People v. McDaniel* (2008) 159 Cal.App.4th 736, 747-748; *People v. Yeats* (1977) 66 Cal.App.3d 874, 879.)

Here, in view of the evidence introduced and the defense presented, the trial court did not have a sua sponte duty to instruct on simple assault.  Defendant was either the aggressor who was guilty of aggravated assault or he was not as he acted in self defense.  The jury could either find defendant committed an assault with a deadly weapon or he did

5

not.  The jury could not have returned a simple assault verdict.  (*People v. McDaniel, supra,* 159 Cal.App.4th at p. 749; *People v. Yeats, supra,* 66 Cal.App.3d at pp. 879-880.)

## B.  The Abstract Of Judgment

Defendant was sentenced to three years in state prison on count 1, felony deadly weapon assault (§ 245, subd. (a)(1)).  Also defendant received a concurrent six-month county jail term on count 2, misdemeanor vandalism (§ 594, subd. (a)).  Defendant committed the aggravated assault prior to the October 1, 2011 effective date of the realignment legislation.  (*People v. Montrose* (2013) 220 Cal.App.4th 1242, 1246; *People v. Wilson* (2013) 220 Cal.App.4th 962, 964.)  The sentence is improperly recorded in the abstract of judgment as a three-year, six-month state prison sentence.  The "principal or consecutive term imposed" and the "total time excluding county jail term" should be *three years*; not three years, six months.

In addition, the abstract of judgment reflects a $40 court operations assessment (§ 1465.8, subd. (a)(1)) and a $30 court facilities assessment (Gov. Code, § 70373, subd. (a)(1)).  However, the trial court correctly ordered those assessments imposed *as to each count.*  (*People v. Sencion* (2012) 211 Cal.App.4th 480, 484; see *People v. Alford* (2007) 42 Cal.4th 749, 758, fn. 6.)  The abstract of judgment must be amended to reflect $80 in court operations assessments and $60 in court facilities assessments.

## IV. DISPOSITION

The judgment is affirmed. Upon remittitur issuance, the clerk of the superior court is to prepare an amended abstract of judgment that reflects: a principal state prison term of three years was imposed; a concurrent county jail term of six months was imposed; $80 in court operations assessments under Penal Code section 1465.8, subdivision (a)(1); and $60 in court facilities assessments under Government Code section 70373, subdivision (a)(1). The clerk of the superior court is to deliver a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P. J.


We concur:


MOSK, J.


MINK, J.*

---

*  Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.