[Crim. No. 14329. Third Dist. Sept. 18, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
VAUGHN LEE SHADE, Defendant and Appellant.

**COUNSEL**

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, and Roy M. Dahlberg, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert D. Marshall and Michael T. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MULKEY, J.**\*—Defendant was convicted of second degree murder and sentenced to life in prison with the possibility of parole. On appeal he argues the trial court erred (1) by instructing the jury that malice is a wish to vex, annoy or injure another person, or an intent to do a wrongful act, and (2) by improperly instructing on the law of self-defense. We shall affirm.

Marvin Phoenix was spending the evening of May 11, 1984, with friends and relatives, including defendant, at the Phoenix house. Phoenix's dog began barking, indicating someone was outside. At that moment, Eldon "Bean Sprout" Cress kicked in the front door, pointed a .22 caliber rifle at defendant and stated, "I'm going to kill you, Bill Shade." Phoenix started struggling with Cress for the gun. Defendant ran over and took the gun away from Cress. Phoenix, then, noted a white van outside. Fearing the white van was related to the attack, Phoenix ran upstairs to get his own gun. When he came back downstairs, Cress and defendant still were fighting. Defendant was hitting Cress about the shoulder and head with Cress's gun. Defendant continued to hit Cress even after Cress fell to the floor and was rendered unconscious.

When Phoenix went outside, he saw the van coming into the driveway. He fired a round into the air and the occupants fired back. Defendant then ran outside saying they should go to a phone and call the police. They got into defendant's pickup and headed toward defendant's girlfriend's house. On the way, they encountered the white van and gave chase. The van ultimately stopped and was abandoned. Defendant and Phoenix pushed it off the road, and Phoenix shot the rear tire and into the front to immobilize it. They then continued to defendant's girlfriend's house and she tried to call the police. Defendant was uncertain if she (defendant's girlfriend) had gotten through and decided to call from another location. He got his gun and some ammunition and left with Phoenix. Taking the long way to avoid further contact, they stopped to check on the welfare of those at the Phoenix house.

While they had been gone, Cress had been rendered first aid. He was turned on his side and a blood clot was removed from his mouth; he was still breathing.

When defendant and Phoenix returned, the dog was still barking. They went into the backyard to search and after awhile became separated. When Phoenix returned to the house, defendant was holding the barrel of a gun,

---

\*Assigned by the Chairperson of the Judicial Council.

swinging it and striking Cress, who was lying on the floor. Defendant stated, "Well, you guys beat me up the last time. How does it feel to get beat up?"

When the police arrived they found Cress's inert body lying on its back. Cress's face had been so badly beaten he was unrecognizable. The cause of death was the driving of bone fragments into the brain.

## I

■ Defendant first argues the trial court erred by improperly instructing the jury on malice. The trial court, upon the prosecution's request, instructed the jury pursuant to CALJIC No. 1.22 that malice means "a wish to vex, annoy, or injure another person, or an intent to do a wrongful act . . . ." (Pen. Code, § 7, subd. 4.) The CALJIC use note specifically states this instruction should not be given in a murder trial, citing *People* v. *Chavez* (1951) 37 Cal.2d 656, 666 [234 P.2d 632]. (CALJIC No. 1.22 (1980 revision); see also Witkin, Cal. Crimes (1963) Crimes Against The Person, § 320, p. 291.) The trial court, however, also gave CALJIC No. 8.11, the proper definition of malice aforethought for purposes of a murder prosecution.[1] (See Pen. Code, § 188.)

It is fundamental that a defendant charged with a crime is entitled to have the jury determine guilt or innocence. (Cal. Const., art. I, § 16; see also *Cabana* v. *Bullock* (1986) 474 U.S. 376, 384 [88 L.Ed.2d 704, 715, 106 S.Ct. 689].) Due process forbids conviction unless the jury finds each element of the crime charged beyond a reasonable doubt. (*In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068]; *People* v. *Vann* (1974) 12 Cal.3d 220, 228 [115 Cal.Rptr. 352, 524 P.2d 824]; *People* v. *Dillon* (1983) 34 Cal.3d 441, 473 [194 Cal.Rptr. 390, 668 P.2d 697]; see Pen. Code, § 1096.) The trial court thus has a duty to instruct the jury on all elements of the case submitted to it. (*People* v. *Haney* (1977)

---

[1] The jury was instructed as follows: "Malice" may be either express or implied.

[Malice is express when there is manifested an intention unlawfully to kill a human being.]

[Malice is implied when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life].

[When it is shown that a killing resulted from the intentional doing of an act with express or implied malice, no other mental state need be shown to establish the mental state of malice aforethought.]

The mental state constituting malice aforethought does not necessarily require ill will or hatred of the person killed.

"Aforethought" does not imply deliberation or the lapse of considerable time. It only means that the required mental state must precede rather than follow the act. (CALJIC No. 8.11 (1983 revision), as mod.)

75 Cal.App.3d 308, 312 [142 Cal.Rptr. 186]; *People* v. *Iverson* (1972) 26 Cal.App.3d 598, 604-605 [102 Cal.Rptr. 913].)

Malice is an element of murder (Pen. Code, § 187), and the jury was instructed it could find defendant guilty only if it found he acted with malice aforethought. However, the jury was given two definitions of malice, one legally incorrect, and one legally correct.

Although it was error for the court to have instructed on the basis of CALJIC No. 1.22, the error was harmless when the court also correctly instructed on malice aforethought as defined in Penal Code section 188 and embodied in CALJIC No. 8.11. (*People* v. *Price* (1965) 63 Cal.2d 370, 374 [46 Cal.Rptr. 775, 406 P.2d 55]; *People* v. *Chavez* (1951) 37 Cal.2d 656, 666-667 [234 P.2d 632]; see also *People* v. *Harris* (1985) 175 Cal.App.3d 944, 956 [221 Cal.Rptr. 321].). This is so because, in these circumstances, reversal is required only when the reviewing court cannot determine from the record on which theory the verdict rested. (*People* v. *Green* (1980) 27 Cal.3d 1, 69 [164 Cal.Rptr. 1, 609 P.2d 468].) Here the record supports only the "intent" theory of malice. Defendant, while asking the victim how it felt to be beat up, intentionally and repeatedly hit the victim about the head and shoulders with a shotgun, rendering the victim's face unrecognizable, while the victim lay helpless on the floor. This evidence clearly indicates defendant harbored a conscious disregard for life and supports the conviction based on the correct theory of malice.

Voluntary manslaughter is the unlawful killing without malice. (Pen. Code, § 192, subd. (a).) It exists when the defendant acts out of a heat of passion or under the honest, but unreasonable, belief that it is necessary to defend himself from imminent peril to life or great bodily injury. (Pen. Code, § 192, subd. (a); *People* v. *Wickersham* (1982) 32 Cal.3d 307, 326-328 [185 Cal.Rptr. 436, 650 P.2d 311].) The jury was so instructed. If malice is adjudged by the minimal standard of vexing or annoying, a jury would be hard-pressed to find its absence. Thus, if the evidence supports voluntary manslaughter, the jury may have found malice and convicted defendant based on the incorrect definition.

The evidence, however, does not support either theory of voluntary manslaughter. Although an armed intruder bursting in, pointing a gun at defendant and stating he was going to kill him would be sufficient provocation to incite the passions and negate malice, defendant must have been under the influence of passion at the time of the homicide. (*People* v. *Wickersham, supra,* 32 Cal.3d at pp. 326-327; *People* v. *Sedeno* (1974) 10 Cal.3d 703, 719 [112 Cal.Rptr. 1, 518 P.2d 913] [disapproved on other grounds *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 (160 Cal.Rptr. 84, 603 P.2d

1)].) Since the victim was still breathing after the initial beating, the homicide did not occur until the second beating. (See Pen. Code, § 187.) At that point, sufficient time had elapsed between the provocation and the fatal blow, for passion to subside and reason to return. (*People* v. *Wickersham, supra,* 32 Cal.3d at p. 327.) Defendant left the house to call the police; he chased and disabled the white van; he asked his girlfriend to call the police and waited while she tried to get through; he got his own gun and ammunition and decided to call from another location; he took the long way back to the house; and he searched the area of the house before he resumed the attack. These facts indicate defendant was thinking rationally when he killed the victim. Moreover, the fact that the victim was lying unconscious and helpless on the floor belies any claim that defendant acted out of an honest but unreasonable belief that his conduct was necessary to defend himself.

Thus, the record as a whole indicates the conviction rested on the correct theory of malice. (*People* v. *Green, supra,* 27 Cal.3d at p. 69.) It is not reasonably probable a result more favorable to defendant would have been reached in the absence of the error (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]) and no miscarriage of justice has been suffered. (Cal. Const., art. VI, § 13.)[2]

## II

Defendant next argues the trial court improperly instructed on the law of self-defense. The jury was instructed, pursuant to CALJIC No. 5.12, which provides in pertinent part, a killing is justified (1) if the circumstances are sufficient to excite the fears of a reasonable person that there is imminent danger of death or great bodily injury, and (2) the party killing acted under the influence of such fears alone. (CALJIC No. 5.12 (4th ed. 1979).) Defendant now argues this is an incorrect statement of the law because it tells the jury self-defense is not available when a person does not act out of fear alone, but out of fear and a desire to harm the attacker. Defendant's argument is meritless. Penal Code section 198 specifically states "'the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted *under the influence of such fears alone.*'" (Italics added; see also *People* v. *Flannel, supra,* 25 Cal.3d at p. 675.) Furthermore, the evidence in no way supports any finding of self-defense. To be exculpated on a theory of self-defense, defendant must have had an honest and reasonable fear of imminent danger. (Pen. Code, § 197, subd. 3; *People* v. *Flannel, supra,* 25 Cal.3d at pp. 674-675; Witkin, Cal.

---

[2]Defendant argues the error was compounded by the prosecutor arguing the incorrect definition of malice to the jury. However, the jury was specifically instructed that it is the duty of the judge to instruct them as to the rules of law and statements of attorneys are not evidence.

Crimes (1963) Defenses, § 159, p. 152.) Although defendant properly may have had an honest and reasonable fear of imminent danger when Cress first burst in, defendant's renewed beatings had no such justification. Cress was lying unconscious and helpless on the floor, yet defendant repeatedly struck him with the shotgun.[3]

The judgment is affirmed.

Evans, Acting P. J., and Carr, J., concurred.

A petition for a rehearing was denied October 15, 1986, and appellant's petition for review by the Supreme Court was denied January 15, 1987.

---

[3]Defendant points to conflicting evidence whether there were in fact two beatings, impliedly claiming there was only the first, which would have been justified as self-defense. Two witnesses, however, specifically testified at trial that defendant beat Cress twice, and a third witness testified Cress was still breathing after the first beating.