[No. F008546. Fifth Dist. Apr. 26, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
ARNOLD TREVINO, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, only the section entitled "FACTS" and part I of this opinion are certified for publication.

**COUNSEL**

Frank O. Bell, Jr., and Harvey R. Zall, State Public Defenders, under appointment by the Court of Appeal, Jeremy E. Friedlander, Ray M. Dahlberg and Linda Y. Chang, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Joel Carey and Lisbeth Bellet, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**THE COURT.**[*]—Appellant Arnold Trevino stands convicted, following a jury trial, of one count of second degree murder (Pen. Code, § 187).[2] The jury further found that he used a knife in the commission thereof (§ 12022, subd. (b)). Sentenced to state prison for a term of 16 years to life, he appeals, contending that prejudicial instructional error occurred. For the reasons stated herein, we disagree and affirm.

### FACTS

During the early morning of September 12, 1986, Arnold Trevino stabbed and killed Ricky Blanton. They had a fight several hours earlier, with Blanton emerging as the winner. Trevino threatened Blanton at that time. At trial, the prosecution presented evidence that Blanton was asleep when Trevino inflicted the first stab wound.[3]

Trevino testified in his own behalf and admitted stabbing Blanton, but claimed that Blanton was awake the whole time and that he assaulted Trevino. Fearing another beating, Trevino pulled his knife from its sheath

---

[*] Before Woolpert, Acting P. J., Martin, J., and Best, J.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

[3] Blanton suffered three wounds, the third of which lacerated his pulmonary arteries and caused him to bleed to death.

and just started swinging. He was unaware until later that he had hurt Blanton.[4]

## DISCUSSION

### I CALJIC No. 5.12

■■■ Trevino first contends that the trial court committed prejudicial error by giving CALJIC No. 5.12, Fourth edition 1979,[5] (justifiable homicide in self-defense).[6] He argues that there was evidence in the instant case from which the jury could have concluded that he acted both out of a reasonable fear, and also out of ill will toward Blanton. He argues that where the danger is real, not imagined, and imminent, not inchoate, his actions need not be motivated by fear alone. From this, he concludes that the "reasonable fears alone" rule embodied in CALJIC No. 5.12 should be applied only in cases in which the defendant mistakenly perceives danger, as opposed to cases in which the danger is real, and that it was error to instruct the jury in the case at bench to apply the rule without also instructing them to first determine whether the danger to which Trevino reacted was apparent rather than real, and inchoate rather than imminent. He contends that there was evidence from which the jury could have found that the danger was real and not merely apparent or inchoate and that his fear was reasonable, yet could have determined that Trevino did not act under the influence of fear alone. Thus, he concludes, they could have erroneously ruled out self-defense based on the fact that they were not properly instructed. ■ ■ ■ ■ We disagree.[7]

---

[4]Conflicting evidence was presented regarding the level of Trevino's intoxication. It was uncontroverted that he had been drinking and taking drugs prior to the initial fight with Blanton.

[5]All CALJIC jury instructions referred to, unless otherwise noted, are from the Fourth edition 1979.

[6]CALJIC No. 5.12 states: "The killing of another person in self-defense is justifiable and not unlawful:

"1. When the person who does the killing has reasonable ground to believe and does believe that there is imminent danger that the other person will kill him or cause him great bodily injury, and

"2. A reasonable person under the same circumstances would believe that it was necessary to kill the other person to prevent death or great bodily injury to himself.

"In order to justify killing another person in self-defense, actual danger or great bodily injury is not necessary. On the other hand, a bare fear of death or great bodily harm is not sufficient.

"In order to justify a killing it must be established:

"1. The circumstances must be sufficient to excite the fears of a reasonable person that there was imminent danger of death or great bodily injury, and

"2. The party killing must have acted under the influence of such fears alone and under the belief that such killing was necessary to save himself from death or great bodily injury."

[7]Respondent contends that Trevino waived this issue because trial counsel requested CALJIC No. 5.12. However, the record does not show an articulated tactical basis for counsel's

 CALJIC No. 5.12 embodies provisions of both section 197[8] and section 198.[9] However, Trevino argues that in reality section 198 only applies to subdivisions 2 and 3 of section 197. Thus, the argument runs, section 198's requirement that the party killing act under the influence of reasonable fears alone applies only to those situations in which that party acts in a reasonable but mistaken belief that he is gravely threatened. Trevino concludes that in order to find the homicide justifiable when there is only apparent necessity for the killing, the jury must find that the use of deadly force was reasonable and wholly innocently motivated. However, when the need to use deadly force is real, a person may reasonably use such force regardless of whether he is acting under the influence of fear alone. Likewise, where the threat to which the killer reacts is only inchoate and not yet imminent, the use of deadly force must be based on reasonable fears alone. Since in the instant case the jury could have found that Trevino was confronted with a real and imminent, as opposed to merely apparent or inchoate, need to use deadly force, they could have found that he acted out of hatred as well as fear and yet still committed a justifiable homicide.

As Trevino concedes, no case authority recognizes the distinctions he seeks to draw. We find the law to be settled that "[t]o be exculpated on a theory of self-defense one must have an honest *and* reasonable belief in the need to defend. [Citations.] A bare fear is not enough; 'the

---

request, as *People* v. *Wickersham* (1982) 32 Cal.3d 307, 332 [185 Cal.Rptr. 436, 650 P.2d 311], requires before invited error can be found. Furthermore, because Trevino's substantial rights are affected by the challenged instruction (§ 1259), we find it proper to consider this issue on its merits.

[8] Section 197 states: "Homicide is . . . justifiable when committed by any person in any of the following cases:

"1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or,

"2. When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein; or,

"3. When committed in the lawful defense of such person, or of a wife or husband, parent, child, master, mistress, or servant of such person, when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or the person in whose behalf the defense was made, if he was the assailant or engaged in mutual combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed; or,

"4. When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace."

[9] Section 198 states: "A bare fear of the commission of any of the offenses mentioned in subdivisions 2 and 3 of Section 197, to prevent which homicide may be lawfully committed, is not sufficient to justify it. But the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone."

circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone.' (Pen. Code, § 198.)" (*People* v. *Flannel* (1979) 25 Cal.3d 668, 674-675 [160 Cal.Rptr. 84, 603 P.2d 1], original italics; see also, *Jackson* v. *Superior Court* (1965) 62 Cal.2d 521, 529 [42 Cal.Rptr. 838, 399 P.2d 374].) ▮ Hence, an instruction which states that the party killing must act under the influence of such fears alone, is a correct statement of the law. (*People* v. *Vernon* (1925) 71 Cal.App. 628, 629 [235 P. 737]; see also, *People* v. *Rowland* (1929) 207 Cal. 312, 313 [277 P. 1041]; *People* v. *Jones* (1961) 191 Cal.App.2d 478 [12 Cal.Rptr. 777].)

▮ In so holding, we do not mean to imply that a person who feels anger or even hatred toward the person killed, may never justifiably use deadly force in self-defense. For example, it is settled that a person who has sought combat may decline further struggle and, if he really and in good faith does so before the killing, the killing may be justified on the same grounds as if that person had not originally been the aggressor. (See, e.g., *People* v. *Wong Ah Teak* (1883) 63 Cal. 544, 544-545.) Furthermore, if a victim of a simple assault engages in a sudden and deadly counterassault, the original aggressor need not attempt to withdraw, and may reasonably use necessary force in self-defense. (See, e.g., *People* v. *Sawyer* (1967) 256 Cal.App.2d 66, 75 [63 Cal.Rptr. 749].)

In such situations, as in others, it would be unreasonable to require an absence of any feeling other than fear, before the homicide could be considered justifiable. Such a requirement is not a part of the law, nor is it a part of CALJIC No. 5.12. Instead, the law requires that the party killing *act* out of fear alone. Thus, once the initial aggressor attempts in good faith to decline further struggle and communicates this to his opponent, or once the initial victim overreacts and responds with deadly force, the party killing may justifiably use deadly force in self-defense as long as the use of such force is motivated *only* by a reasonable fear and the belief that it is necessary to prevent his death or great bodily injury. The party killing is not precluded from feeling anger or other emotions save and except fear; however, those other emotions cannot be causal factors in his decision to use deadly force. If they are, the homicide cannot be justified on a theory of self-defense. But if the only causation of the killing was the reasonable fear that there was imminent danger of death or great bodily injury, then the use of deadly force in self-defense is proper, regardless of what other emotions the party who kills may have been feeling but not acting upon.

▮ CALJIC No. 5.12 properly instructs the jury that the party killing must have *acted* under the influence of reasonable fears alone. It does not

eliminate a feeling of anger or any other emotion so long as that emotion was not part of the cause of the use of deadly force. It is, therefore, a correct statement of the law of self-defense. In the case at bench, Trevino could have requested additional instructions with regard to his feeling anger toward Blanton as well as fear, or with regard to a situation where anger and fear were both causal factors. He did not do so. Nor did he argue to the jury the presence of such dual motivation or feeling. Under such circumstances, his argument on appeal must fail.

Recently, the Court of Appeal for the Third Appellate District found "meritless" the argument presented by Trevino. We agree with that court's holding in *People* v. *Shade* (1986) 185 Cal.App.3d 711 [230 Cal.Rptr. 70],[10] despite Trevino's contention that *Shade* gave no logical explanation for its holding, and that its rationale is incomplete because it fails to address the California Supreme Court's holding in *People* v. *Barry* (1866) 31 Cal. 357.[11]

In *Barry,* the court determined that if A assaulted B with a deadly weapon, and B could only save his own life by killing A, then the killing was justifiable even if B's weapon was superior to A's. "If the accused was defending himself from an attack of the deceased that rendered it necessary for the protection of his own life that he should kill him, though he resolved to kill him before the fatal blow was given, the killing was not murder. In cases of necessary self-defense, the act done in such defense is justified on the ground that it was necessary for the preservation of the life of the slayer, and the intent to take the life of the assailant as a necessity may precede the act which results in his death." (*Id.,* at p. 358.)

From this, Trevino concludes that the fact that the slayer had a prior disposition to do harm to the victim does not eliminate the applicability of self-defense in the case of a real danger. However, this interpretation of *Barry* is overly broad. The foregoing passage refers to a situation in which the intent to take the life of the assailant does not arise out of a motivation other than fear, but instead is based on the slayer's reasonable perception that in order to defend himself, he will have to kill his assailant. In such a situation, intent to kill can precede the killing, but still can be based on reasonable fears alone, and thus does not preclude a finding of justifiable homicide.

---

[10] Review denied January 15, 1987.
[11] We note that we could find only one case that cited *Barry*.

II CALJIC Nos. 8.75 and 8.11*

. . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Appellant's petition for review by the Supreme Court was denied August 10, 1988.

---

* See footnote, *ante*, page 874.