Filed 11/19/13  P. v. Lopez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDUARDO CERVANTES LOPEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B243343<br>(Super. Ct. No. 2010030236)<br>(Ventura County) |

Eduardo Cervantes Lopez appeals his conviction by jury of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[1] with special findings that he personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)) and committed the assault for the benefit of or in association with a criminal street gang (§ 186.22, subd. (b)). Appellant admitted two prior prison term enhancements (§ 667.5, subd. (b)) and was sentenced to eight years state prison.  Appellant contends that the trial court erred in not giving a *Hecker* instruction (*People v. Hecker*  (1895) 109 Cal. 451) on the use of deadly force to repel a sudden and perilous threat by an opponent in a fist fight.  We affirm.

*Facts and Procedural History*

On the afternoon of August 23, 2012, appellant confronted Bobby Dominquez as he worked on a car outside an Oxnard apartment.  Appellant, an active member of the El Rio Troublestreet gang, asked in an angry voice "Ey, where you from?"[2]  It was a gang term

---

[1] All statutory references are to the Penal Code.

[2] Appellant was 36 years old and went by the moniker Pleito which means "fight."

likely to lead to violence.   Dominquez, a member of the Colonia Chiques street gang, answered "What's it to you" and resumed work.  Appellant replied, "I'm asking you a fucking question, dog . . . . Where you from?"

Rafael Gonzalez, Dominguez's friend, watched as Dominguez argued with appellant.   At some point, appellant said "Fuck Colonia"   and, taunting Gonzalez and Dominguez, said "What? Are you both going to jump me?"   Gonzalez stepped back and said "No, it's one on one."  Appellant said, "Let's take it to the alley" and exchanged punches with Dominquez.

Dominguez punched appellant on the side of the head, causing appellant to fall down on one knee.  Appellant drew a large kitchen knife from his pocket,  said "Big bad El Rio," and stabbed Dominguez twice in the chest and once in the abdomen.

Oxnard Police arrested appellant minutes later.  Appellant had already changed his shoes, shirt and pants, and hid the knife.  Officers searched appellant's bedroom and found drug paraphernalia, a glass smoking pipe, a metal box and notebook with the words "El Rio" printed on it, and a syringe commonly used to inject heroin.  A kitchen knife was hidden under the couch cushion.

Rafael Gonzales told the police that appellant provoked the fight when he challenged Dominguez and said, "Fuck Colonia."  Gonzalez did not recall who threw the first punch but did see appellant stab Dominguez and run.  This was corroborated by the neighbor, 14-year-old Cynthia G., who heard yelling and saw appellant stab Dominguez. No one saw Dominguez with a weapon.

At trial, appellant claimed that Dominguez was the aggressor and took his shirt off and shouted "Colonia Chiques."  Appellant was concerned because he was on Colonia Chiques gang turf and feared that Dominguez and Gonazalez would "beat me till I am dead or lose conscious[ness]."  On cross-examination, appellant admitted that Dominguez did not have a weapon,  that he did not know anything about Dominguez or Gonzalez,  and that it was a one-on-one fight.

The prosecution argued that mutual combat and self-defense were the only issues.  Defense counsel told the jury that appellant had the right to stand his ground and the

2

prosecution has "to disprove self-defense. It has been raised. It is before you." The trial court instructed on the right to self-defense (CALCRIM 3470), right to self-defense: mutual combat or initial aggressor (CALCRIM 3471), and that self-defense cannot be contrived (CALCRIM 3472).

*Hecker Instruction*

Appellant contends that the trial court erred in not instructing on the right to respond with deadly force when faced with a sudden and perilous threat of force by an opponent. (*People v. Hecker, supra,* 109 Cal. 451 (*Hecker*).) The trial court gave CALCRIM 3471 on self defense in mutual combat[3] but denied appellant's request to instruct on the bracketed part of the instruction which states: "[I]f the defendant used only non-deadly force, and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend himself with deadly force and was not required to try to stop fighting or communicate the desire to stop to the opponent, or give the opponent a chance to stop fighting." (Judicial Council of California, Criminal Jury Instructions (2013) CALCRIM 3471, p. 963.)

The trial court refused to give the *Hecker* instruction because there was no evidence that Dominguez was armed or used deadly force. It did not err. A defendant is entitled to an instruction that pinpoints his theory of the defense, providing the instruction is supported by substantial evidence. (*People v. Johnson* (2009) 180 Cal.App.4th 702, 707.) "Substantial evidence is evidence sufficient to 'deserve consideration by the jury,' that is evidence that a reasonable jury could find persuasive." (*People v. Barton* (1995) 12 Cal.4th 186, 201, fn. 8.)

---

[3] The jury was instructed: "A person who engages in mutual combat or who starts a fight has a right to self-defense only if: [¶] 1. He actually and in good faith tried to stop fighting; [¶] AND [¶] 2. He indicated, by word or by conduct, to his opponent, in a way that a reasonable person would understand, that he wanted to stop fighting and that he had stopped fighting; [¶] AND [¶] 3. He gave his opponent a chance to stop fighting. [¶] If the defendant meets these requirements, he then had a right to self-defense if the opponent continued to fight. [¶] A fight is mutual combat when it began or continued by mutual consent or agreement,. That agreement may be expressly stated or implied and must occur before the claim to self-defense arose."

3

Appellant claims that a pugilist can lawfully use deadly force to repel a "sudden and perilous"counterattack such as a blow to the head because "perilous" is something less than "deadly." The argument fails because a *Hecker* instruction requires that "the opponent respond with such *sudden and deadly force* that the defendant could not withdraw from the fight." That is the language of CALCRIM 3471, which is consistent with *Hecker*: "Where one is the first wrongdoer, but his unlawful act is not felonious, as a simple assault upon the person of another, . . . and this unlawful act is met by a counter assault of a deadly character, the right of self-defense to the first wrongdoer is not lost. . . [O]ne may always defend himself against a criminal attempt to take his life. . . . If, however, the counter assault be so sudden and perilous that no opportunity be given to decline or to make known to his adversary his willingness to decline the strife, if he cannot retreat with safety, then as the greater wrong of the deadly assault is upon his opponent, he would be justified in slaying, forthwith, in self-defense. [Citations.]" (*Hecker, supra,* 109 Cal. at p. 464.)

Appellant asserts that the court in *Hecker* must have used "perilous" more broadly than "deadly" because the right to kill in self-defense arises when one perceives an imminent danger of great bodily injury. (See *In re Christian S.* (1994) 7 Cal.4th 768, 773.) But that holds truly only when one is "without fault." (*Hecker*, *supra,* 109 Cal. at p. 462.) Self-defense "may not be invoked by a defendant who, through his own wrongful conduct (e.g., the initiation of a physical assault or the commission of a felony), has created circumstances under which his adversary's attack or pursuit is legally justified. [Citations.]" (*In re Christian S., supra,* 7 Cal.4th at p., 773, fn. 1.) When one is the initial aggressor, one must withdraw before using lethal self-defense unless his attack is not felonious and met by a counterassault of a deadly character "so sudden and perilous" that withdrawal is impossible. (*Hecker*, *supra,* 109 Cal. at p. 464.)

Appellant instigated the fight and was knocked down with a punch to the head. The blow was sudden but did not involve a weapon or deadly force. Appellant quickly got to his feet, and stabbed Dominguez. Rather than turn and run (i.e., withdraw from the fray), appellant stabbed Dominguez two more times. Self-defense may be resorted to in order to repel force, but not to inflict vengeance. (Levenson & Riccardulli, Cal.

4

Criminal Law, The Rutter Group (2012) § 4.27, p. 4-39, fn. 2; *People v. Trevino* (1988) 200 Cal.App.3d 874, 879.)

Appellant opines that the punch to the head was a "perilous" threat of force, justifying the use of deadly force to repel more punches to the body. If that was the law, every person on the losing end of a fist fight could use a knife or a firearm to overcome his opponent. *Hecker* requires that "the attack [be] so sudden and perilous that [defendant] cannot withdraw." (*People v. Sawyer* (1967) 256 Cal.App.2d 66, 75, fn. 2.) The *Hecker* instruction is derived from the principle that "[s]elf-defense is not available as a plea to a defendant who has sought a quarrel with the design to force a deadly issue and thus, through his fraud, contrivance, or fault, to create a real or apparent necessity for [the assault]. [Citation.] . . . [¶] It is not available as a plea to one who by prearranged duel, or by consent, has entered into a deadly mutual combat, in which he slays his adversary. " (*People v. Hecker, supra,* 109 Cal. at p. 462.)

That is the basis for the CALCRIM 3472 instruction, to which appellant did not object. The jury was instructed that "[a] person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force." (See *Fruglia v. Sala* (1936) 17 Cal.App.2d 738, 743.) The trial court reasonably concluded that a *Hecker* instruction was not supported by the evidence. Appellant provoked the fight, agreed to fight Dominguez one-on-one, and suddenly escalated to deadly force after he was knocked down. "[D]efendant was not, in the terms of *Hecker,* 'defending himself against a *criminal* attempt to take his life.' (Italics added.) The entire situation was created by defendant." (*People v. Hardin* (2000) 85 Cal.App.4th 625, 634.)

Appellant complains that the CALCRIM 3471 self-defense instruction is incomplete without a *Hecker* pinpoint instruction. But such an instructional error, if any, is subject to a harmless error analysis. (*Chapman v. State of California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705,710]; *People v. Quach* (2004) 116 Cal.App.4th 294, 303.) The trier of fact is not required to accept the defendant's bare assertion of fear of imminent danger to life to great bodily injury. (*In re Christian S.*, *supra,* 7 Cal.4th at p. 783.) "[F]ear alone must have motivated the defendant to act in self-defense." (Levenson & Riccardulli, Cal. Criminal

Law(Rutter 2012) § 4.27, p. 4-39.)  "A bare fear is not enough; 'the circumstances must be sufficient to excite the fears of a reasonable person and the party killing must have acted under the influence of such fears alone.' [Citations.]" (*People v. Trevino* (1988) 200 Cal.App.3d. 874, 878-879.)

The jury found that appellant carried out the stabbing for the benefit the El Rio Troublestreet gang, with the specific intent to promote criminal conduct by gang members. The gang enhancement finding negates the argument that fear alone motivated appellant to stab Dominguez three times.

The judgment is affirmed.

NOT TO BE PUBLISHED.


                                        YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J

6

James P. Cloninger, Judge

Superior Court County of Ventura

_____

Richard C. Gilman, under appointment by the Court of Appeal, fo Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews and Linda C. Johnson, Supervising Deputy Attorneys General, for Plaintiff and Respondent.

.