Filed 2/28/25  P. v. Edwards CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRYAN LUTHER EDWARDS,<br><br>    Defendant and Appellant. | D083087<br><br><br>(Super. Ct. No. SCE411118) |

APPEAL from a judgment of the Superior Court of San Diego County, Frank L. Birchak, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

Bryan Luther Edwards appeals the judgment entered after a jury convicted him of voluntary manslaughter (Pen. Code, § 192, subd. (a)) for

killing his brother, Derick Edwards. Bryan raises three main challenges on appeal, but he has failed to establish error.

First, contrary to Bryan's claim, substantial evidence supported the instruction on mutual combat. Bryan accepted his brother's challenge to "knuckle up," and a reasonable jury could view Bryan's move from shooting at Derick in the backyard to shooting at him in the front of the house as pursuit rather than withdrawal from the fight. Bryan forfeited his other challenge to the mutual combat instruction by not providing any supporting authority.

Second, the court correctly instructed the jury that, to succeed on his self-defense claim, Bryan must have acted only because of his fear of imminent danger of death or great bodily injury. Bryan cites no authority that obligated the court to independently instruct the jury that he could have mixed motives for shooting his brother so long as fear was the but-for causal factor. And Bryan forfeited his claim the prosecutor erroneously described the meaning of the instruction by not objecting at trial or showing an objection would have been futile.

Third, Bryan seeks a remand for resentencing. Because it was lawful for the court to (1) impose a firearm enhancement under a different code section than the one the jury found true; and (2) dismiss the enhancement and instead use the underlying fact the jury found true—that Bryan personally used and discharged a firearm—as an aggravating factor to impose the upper term for voluntary manslaughter, Bryan forfeited his related claim of error by not objecting at trial. Next, he fails to show prejudice based on the court's reference to an assault weapon when considering a sentence on an enhancement the court eventually dismissed.

Lastly, the court did not, as Bryan asserts, rely on criminal protective order violations when imposing the upper term for voluntary manslaughter.

Thus, we affirm.

## I.

## A.

Derick had a long history of drug abuse. He lived in a trailer in the backyard of the home where Bryan and their mother lived. Derick was not supposed to have drugs or "bad company" while living there.

One day, after smoking methamphetamine, Derick and some friends gathered in the backyard to paint a van. Witnesses described Derick as "agitated" and yelling and "screaming at the top of his lungs." Bryan thought "something was off" with Derick.

According to one witness, Bryan told Derick he was not allowed to have friends over and to take their activity elsewhere. Derick responded with "colorful language" and challenged Bryan, telling him to "knuckle up or kick rocks." Witnesses agreed Bryan walked away at this point, though accounts differ as to how long. Bryan testified he took his pregnant wife to the dentist and returned several hours later. Another witness testified Bryan returned within 15 minutes.

Bryan reentered the backyard and told everyone to leave. According to Bryan, Derick called him names and said it was "time to fight." As Bryan approached Derick, Bryan wrapped his wrists and hands to stabilize them so he could fight. A witness characterized the ensuing fistfight as "a mutual fight."

Before long, the brothers wielded more than fists. Derick escalated things first. As Bryan was getting the better of him, Derick grabbed a screwdriver and "lunged" at Bryan, stabbing him "right in the chest." In that

3

moment, Bryan felt "extreme pressure" in his left lung and saw blood "squirting out" of him.  According to Bryan's wife, Derick screamed at Bryan, "[y]ou got stuck."

In response, Bryan ran into the house, where he retrieved and loaded a semiautomatic rifle.  While Bryan was inside, Derick grabbed the keys to a van parked in the backyard.  Bryan returned to the backyard with the rifle less than one minute later.  He fired three rounds.  Bryan claimed Derick was approaching the house, so he fired warning shots in the dirt to ward him off.  Two other witnesses, however, including Bryan's wife, testified Derick was already getting into the van to flee when Bryan fired.  One witness saw the rifle pointed at Derick and the van.

Derick drove down the street, only to return a minute or two later.  Bryan and his wife went to the front of the house to get into his truck and go to the hospital to treat Bryan's stab wound.  Bryan still carried the rifle.  To the witness in the backyard, it appeared as though Bryan was following Derick.

Bryan testified Derick was driving in circles in front of the house and "screaming . . . he's going to fucking kill me."  Bryan claimed he shot into the dirt as Derick turned towards the driveway.  According to Bryan, he begged Derick to leave, but Derick kept screaming about killing him.  Bryan saw Derick sprint from the van towards him, so Bryan fired the rifle a final time, aiming for Derick's shoulder.

A bystander witness shared a different account.  The witness saw Derick first exit the van, crouch by a tire, and call for help *before* Bryan came out of the house.  The witness testified Bryan exited the house, pointed the rifle at Derick, and "immediately fired."

4

Bryan, "thinking the situation [wa]s over," drove to the hospital to treat his stab wound.

Derick died from a gunshot wound to his chest after a bullet punctured his heart and lung.

## B.

A jury found Bryan not guilty of murder (Pen. Code, § 187) but guilty of the lesser-included offense of voluntary manslaughter (§ 192, subd. (a)).  The jury found true that Bryan intentionally and personally discharged a firearm and proximately caused great bodily injury and death under section 12022.53(d).

The court sentenced Bryan to the upper term of 11 years in prison. Because section 12022.53(d) does not apply to voluntary manslaughter, the court contemplated imposing a firearm enhancement under section 12022.5(a) as a replacement.  Ultimately, however, the court dismissed the firearm enhancement and instead used the underlying facts to justify imposing the upper term.

## II.

We address the two claims of instructional error before turning to Bryan's claims of sentencing error.

## A.

Bryan challenges the factual basis for the jury instruction on mutual combat or initial aggressor.  We conclude substantial evidence supported it.

Even if an instruction correctly states a principle of law, it is error to give an instruction that "has no application to the facts of the case." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.)  As a result, "instructions *not* supported by substantial evidence should not be given."  (*People v. Ross* (2007) 155 Cal.App.4th 1033, 1050.)  In this context, evidence is

substantial if it is "sufficient to deserve jury consideration." (*People v. Marshall* (1997) 15 Cal.4th 1, 39.) Thus, "we must determine whether a reasonable trier of fact could have found beyond a reasonable doubt" that Bryan engaged in mutual combat or was the initial aggressor. (*People v. Cole* (2004) 33 Cal.4th 1158, 1206.)

At issue is an instruction that limits the right to self-defense. The court instructed the jury that a person who "engages in mutual combat" or "starts a fight" has a right to self-defense only if the defendant:

(1)     actually and in good faith tried to stop fighting;

(2)     communicated to the opponent "by word or by conduct" this intent to stop fighting; and

(3)     gave the opponent a chance to stop fighting.

(See CALCRIM No. 3471.) If Bryan met those requirements, the court explained, he had a right to self-defense if his opponent continued to fight. Yet Bryan did not have to meet those requirements if he used only nondeadly force and his opponent "responded with such sudden and deadly force" that Bryan could not withdraw from the fight. Lastly, the court defined mutual combat as a fight that "began or continued by mutual consent or agreement" that could be "expressly stated or implied, and it must occur before the claim to self-defense arose."

Substantial evidence supported the instruction because the fight began as mutual combat. In response to his brother's challenge to "knuckle up or kick rocks," Bryan prepared to fight by wrapping his wrists. This action reflected Bryan's preexisting intention to engage in combat with Derick. (See *Ross*, 155 Cal.App.4th at p. 1045.)

Bryan concedes there is sufficient evidence the brothers "engaged in mutual combat in the backyard." He argues it ended, however, when he went

6

into the house and his brother drove away because they were no longer "exchanging blows" and the "battle was over." According to Bryan, that "lapse of time" created two separate events: (1) "the mutual combat in the backyard" and (2) "the shooting in the front of the house." We disagree.

Although Bryan characterizes his return to the house after shooting the rifle as withdrawing from the fight, on this record a reasonable jury could find otherwise. The evidence supports viewing the entire event as a single bout during which Bryan pursued Derick from the backyard to the front of the house. Bryan fired on Derick in the backyard—either warning shots, as he claims, or at Derick, as a witness testified. Not long after, Bryan moved to the front of the house—following Derick, per a witness—and *continued* shooting. A witness saw Bryan "immediately" fire on Derick upon reaching the front yard. On these facts, a reasonable jury could reject Bryan's characterization.

Bryan argues the confrontation in the front yard was not mutual because he was begging Derick to leave before firing the fatal shot. But "[i]t is well settled that the jury has wide latitude to believe or disbelieve witnesses, or even specific portions of their testimony." (*In re Lopez* (2023) 14 Cal.5th 562, 591.) Bryan acknowledges the jury was not required to believe this testimony. Nor did the jury have to believe his testimony he was done fighting and intended only to go to the hospital after the backyard shots. Instead, the jury could have believed a bystander's version of events, which saw Bryan shoot Derick while he was calling for help and cowering by a tire.

Thus, "the jury could reasonably find that both combatants actually consented or intended to fight *before* the claimed occasion for self-defense arose." (*Ross*, 155 Cal.App.4th at p. 1047, some italics omitted.) As a result, substantial evidence supported giving this instruction.

7

Separately, Bryan contends this instruction was too broad because it also referenced his defense of his wife. As Bryan provides no authority to support this argument, we deem the point forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.) He also forfeited it by not objecting on this specific ground at trial. (*People v. San Nicolas* (2004) 34 Cal.4th 614, 669.)

In sum, Bryan has failed to show the court erred in instructing the jury with CALCRIM No. 3471. We therefore need not address prejudice.

B.

Next, Bryan argues the court erred in instructing on self-defense.

The court instructed the jury using CALCRIM No. 505. Relevant here, to justify killing Derick, the court stated Bryan "must have acted only because of th[e] belief" he or his wife was in imminent danger of death or great bodily injury.

Bryan contends (1) his right to self-defense was not subject to the "'must have acted only because of that belief'" limitation; (2) instead, the standard should be a but-for causation test related to mixed motives for a killing referenced in *People v. Nguyen* (2015) 61 Cal.4th 1015; and (3) even if the instruction was correct, the prosecutor "erroneously described the meaning" of it in closing arguments.

We review claims of instructional error de novo. (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) We address forfeiture before concluding the self-defense instruction correctly stated the applicable law.

1.

The People say Bryan forfeited this claim by failing to object at trial. We consider the merits of the purported instructional error, however, because such a claim is not forfeited if it affected the defendant's substantial rights

(Pen. Code, § 1259) and deciding that question "necessarily requires" us to examine the merits. (*People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249.)

But Bryan forfeited his claim the prosecutor "erroneously described the meaning of the 'must have acted only because of that belief' language." To preserve a prosecutorial misconduct claim, the defendant "must make a timely and specific objection and ask the trial court to admonish the jury to disregard the improper argument" unless doing so would be futile. (*People v. Linton* (2013) 56 Cal.4th 1146, 1205 [cleaned up].) Bryan's trial counsel did not object. Although Bryan claims objecting would have been futile "because the prosecutor's argument superficially tracked the jury instruction," that position is at odds with the substance of his argument premised on the prosecutor *diverging* from the instruction. When the prosecutor said, "when Bryan Edwards pulled that trigger and shot his brother, the only thing that was going through his mind you have to find was self-defense," for example, Bryan could have objected and asked the court to admonish the jury that "[t]hose other thoughts . . . simply could not be the reason appellant shot Derick." Bryan does not explain how such an admonishment would have been futile. As a result, that claim of error is forfeited.

2.

On the claim of instructional error, Bryan first argues the requirement to kill out of fear alone did not apply. We disagree. We also decline Bryan's invitation to deem the People's purported "failure to make any substantive argument" about the "sole reason" language in the instruction is a correct statement of law a concession to error.

As relevant here, under Penal Code section 197, one can justifiably kill another person when:

    (1)    Resisting an attempt to do great bodily injury upon any person;

(2) Committed in defense of a person against someone who "manifestly intends or endeavors" to (a) commit a felony or (b) enter someone's home "in a violent, riotous, or tumultuous manner" to do violence; or

(3) Committed in the lawful defense of a person "when there is reasonable ground to apprehend a design to . . . do some great bodily injury" and "imminent danger" of that injury; but if the person was engaged in mutual combat, then the person must have "really and in good faith" endeavored to end the struggle before it became a homicide. (§ 197(1)-(3).)

Bryan relies on Penal Code section 198—which specifies that "the party killing must have acted under the influence of such fears alone" in the scenarios described in subdivisions (2) and (3)—to argue his act of self-defense was not so constrained because it fell within subdivision (1). (§ 198.) Even if we were to put aside Bryan's concession that his conduct also "arguably fell within subdivisions (2) and (3)," the very cases Bryan cites for subdivision (1) undercut his position. (Citing *People v. Trevino* (1988) 200 Cal.App.3d 874 and *Nguyen*, 61 Cal.4th at p. 1015.) *Trevino* rejected this same argument and instead concluded "an instruction [that] states that the party killing must act under the influence of such fears alone[ ] is a correct statement of the law." (*Trevino*, 200 Cal.App.3d at p. 879.) Our Supreme Court endorsed *Trevino* in *Nguyen*. (*Nguyen*, 61 Cal.4th at p. 1045.)

Bryan contends the "practical effect" of the instruction deprived him of the right to self-defense "if he *harbored* any degree of frustration or ill will towards Derick when he shot him." (Italics added.) Not so. Neither the law nor the instruction "require an absence of any feeling other than fear[ ] before the homicide could be considered justifiable." (*Trevino*, 200 Cal.App.3d at

10

p. 879.) "Instead, the law requires that the party killing *act* out of fear alone." (*Nguyen*, 61 Cal.4th at p. 1045 [cleaned up].) The causal factor must be fear rather than any other emotion.

In sum, Bryan gives us no reason to deviate from longstanding caselaw on this point. (See *Nguyen*, 61 Cal.4th at p. 1045 [collecting cases].)

3.

Next, Bryan contends that, even if the acting out of fear alone limitation applies, the instruction is still defective because it does not include *Nguyen*'s but-for causation language. Again, we disagree.

This argument comes from dicta in which *Nguyen* noted the defendant did not argue—at trial or on appeal—"the jury should have been instructed that acting based on mixed motives is permissible so long as reasonable fear was the but-for cause of [the] decision to kill." (*Nguyen*, 61 Cal.4th at p. 1046.) As a result, our Supreme Court had "no occasion to consider whether such a rule would be consistent with section 198 as interpreted in *Trevino*." (*Ibid.*) Like the *Nguyen* defendant, Bryan never asked the trial court for this but-for instruction. Although Bryan believes CALCRIM No. 505 "should include" such language, he does not provide any authority obligating a trial court to so modify the instruction absent a request from a party. Consequently, he has failed to establish error.

C.

Lastly, seeking a remand for resentencing, Bryan argues the trial court erred by (1) substituting the section 12022.53 firearm enhancement for one under section 12022.5 and then dismissing the enhancement and instead using the underlying facts to justify the upper term for voluntary manslaughter; (2) using the fact Bryan possessed an assault weapon as an aggravating factor for the sentence it considered but did not impose on the

11

enhancement; and (3) imposing the upper term for voluntary manslaughter by purportedly relying on violations of a criminal protective order that were neither stipulated to nor proven beyond a reasonable doubt. The People argue forfeiture. We agree the first point is forfeited. We discern no reversible error on the other two points.

1.

Bryan concedes the law permits the trial court to impose (1) the section 12022.5 enhancement and (2) the upper term for voluntary manslaughter based on the underlying facts instead of imposing a sentence for the enhancement. (Citing *People v. McDavid* (2024) 15 Cal.5th 1015, 1030.) Yet he argues the procedure violated his due process right to notice.

A defendant forfeits appellate claims by not objecting to sentences that, "though otherwise permitted by law, were imposed in a procedurally or factually flawed manner." (*People v. Scott* (1994) 9 Cal.4th 331, 354.) As Bryan admits the law permits his sentence, his failure to object forfeits the issue on appeal.

2.

Bryan advocates for resentencing because the court "viewed [his] possession of an assault weapon as a factor in aggravation" in *considering* a sentence for the firearm enhancement despite no corresponding jury finding. Yet the court ultimately imposed *no* sentence for the enhancement and instead dismissed it. And the record reflects the court did not use the nature of the firearm as a factor for the sentence it imposed for voluntary manslaughter, as it recognized the fact the firearm was an "assault weapon could not justify an upper term because it was not proven or found true . . . beyond a reasonable doubt by a jury." Accordingly, Bryan cannot—and does

12

not—identify any resulting prejudice.  And without a showing of prejudice, we will not remand for resentencing.

3.

Bryan's last argument—that the court erroneously relied on criminal protective order violations in imposing the upper term for voluntary manslaughter—rests on a faulty factual premise.  The record does not indicate the court did so.  To the contrary, when discussing whether to depart from the lower term, the court first mentioned aggravating factors "*other than* the criminal protective order."  (Italics added.)  And in the end, the court cited only one aggravating factor as the basis for imposing the upper term—that Bryan used and discharged a firearm.  Thus, this point does not justify a remand for resentencing.

III.

We affirm the judgment.

CASTILLO, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.

13