Filed 2/25/15  P. v. Harrington CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VERNON ERWIN HARRINGTON II,<br><br>    Defendant and Appellant. | H039533<br>(Santa Clara County<br>Super. Ct. Nos. 211661, C1086537) |

Defendant Vernon Erwin Harrington II was convicted by a jury of two counts of second degree burglary (Pen. Code, §§ 459, 460, subd. (b))[1] and two counts of second degree robbery (§§ 211, 212.5, subd. (c)).  The charges arose out of two separate incidents in which Harrington, along with one or more companions, took liquor bottles from stores and resisted when store employees tried to recover the merchandise.  The incidents were initially charged separately, one by grand jury indictment (Santa Clara County case No. 211661) and the other by felony complaint (Santa Clara County Case No. C1086537), but were subsequently joined for trial upon the trial court granting the People's joinder motion.

Following his conviction, Harrington moved for a new trial, on the ground there was insufficient evidence to support his conviction for robbery as an aider and abettor in one of the incidents.  The motion was denied.  The trial court suspended imposition of

---

[1] Further unspecified statutory references are to the Penal Code.

sentence, ordered him to serve six months in county jail and placed him on formal probation for four years.

On appeal, Harrington renews the argument made in his unsuccessful motion for a new trial that there was insufficient evidence to support his conviction for robbery in one of the incidents because there was no evidence to support a finding that his companion's threat to harm a store employee was a natural and foreseeable consequence of the intended theft. He also argues the trial court erred in granting the motion to consolidate the two cases against him.

Finally, Harrington contends the trial court erred in failing to give a pinpoint instruction to the jury on the robbery charge clarifying its authority to consider lesser included offenses; and alternatively, his trial counsel was ineffective for failing to request such a pinpoint instruction.

We find no error and shall affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Harrington was initially indicted by a grand jury on, among other charges, one count of second degree burglary (§§ 459, 460, subd. (b)) and one count of second degree robbery (§§ 211, 212.5, subd. (c)) arising out of the theft of liquor from the La Canasta Liquor and Grocery Store on March 21, 2010. He was also charged by felony complaint with one count of second degree burglary (§§ 459, 460, subd. (b)) and one count of second degree robbery (§§ 211, 212.5, subd. (c)) arising out of the theft of liquor from a Rite Aid store on June 7, 2010.

Prior to trial, the prosecution moved to join the indictment and information on the ground that Harrington was charged with identical offenses, i.e., second degree burglary and robbery, in both cases. Harrington opposed joinder, arguing it would deprive him of a fair trial. In its order granting the motion, the trial court found "[t]he indictment and the information have almost identical charges stemming from similar conduct: the defendant goes into a store with counterparts, puts liquor bottles in his pants, walks out of the store

2

without paying, and when confronted by store personnel, he threatens or assaults the victims." The trial court also found that any inflammatory effect of the joinder would be negated because the offenses were similar and the evidence of Harrington's "guilt is of equal strength in both cases."

Prior to trial, the prosecution brought an in limine motion under Evidence Code section 1101, subdivision (b), arguing the evidence of each incident should be cross-admissible as evidence of Harrington's intent or common plan. The trial court denied the motion. In its written order, the trial court acknowledged the evidence could be admissible as evidence of intent and common plan, but expressly found, under Evidence Code section 352, its probative value was substantially outweighed by its prejudicial effect.

### A.     *Theft of liquor from La Canasta Liquor and Grocery Store*

At approximately 1:45 a.m. on March 21, 2010, Harrington and two other men entered La Canasta Liquor and Grocery Store in San Jose. Randhir Singh Dhillon, a co-owner of the store, was working at the front register. Harrington and his companions went to the liquor section of the store and picked up bottles of liquor. Harrington picked up three bottles of Grey Goose vodka.

Dhillon was concerned the men intended to steal the liquor so he approached them and asked them for identification. No one showed Dhillon any identification, but one man pushed him. Dhillon said if they could not show him identification, they would have to put the bottles down. Dhillon was able to grab a couple of bottles back, but Harrington and the others managed to exit the store with several bottles, including the vodka Harrington had grabbed. The men walked quickly to a car waiting in front of the store and drove off. Dhillon testified that, during the incident, he was afraid the men would hit him with a bottle or "done [*sic*] more damage."

The surveillance tape of the incident was played for the jury, and several still photographs from the tape were admitted into evidence.

3

B.     *Theft of items from Rite Aid* (*Counts 4 and 5*)

At approximately 2:00 p.m. on June 7, 2010, Sean Voight, a Rite Aid loss prevention agent, observed Harrington and another man enter the store. The men split up and walked quickly down separate aisles, looking around as if to see if they were being observed. The men walked toward the liquor aisle and Voight overheard one of the men say, "Is it clear? Is anybody around?" Harrington and his cohort each picked up a package of Crown Royal whisky from the shelf. They took the bottles out of the boxes in which they were packaged and tried to remove the security caps on those bottles. Voight heard one of the men say, "Cap stuck. I can't get it off." They then placed the bottles down the front of their pants.

The two men walked around the store. Voight surreptitiously followed Harrington and saw him pick up a lock, remove it from its packaging and put it in his pocket. Harrington replaced the empty package on the shelf. He picked up a pair of scissors or beauty shears, but put those on a different shelf.

Harrington met up with the other man back at the liquor aisle, where they each picked up a bottle of Tanqueray vodka, removed the security caps and put the bottles inside their pants, next to the bottles of whisky.

Voight went outside the store and stood by the exit. Neither Harrington nor the other man stopped at the cashier as they exited the store. Voight could hear the store alarm going off as they left and heard the sound of glass bottles clanking together inside the men's pants. Voight confronted the men, identified himself as a loss prevention officer and said he wanted the merchandise returned. Harrington said, "We didn't steal anything." Voight put up his hands toward Harrington, and the other man said, "You better not touch him or you'll get hurt, I have a knife." The man reached toward his back pocket. Voight was afraid the man had a weapon, so he backed away and let them leave. He saw Harrington and the other man climb into a four-door sedan and drive away. Voight noted the license plate of the car and called 911.

4

At trial, a video from the Rite Aid's surveillance camera was played for the jury, as Voight narrated.

### C. Verdict and sentencing

The jury found Harrington guilty of second degree burglary (§§ 459, 460, subd. (b), counts 1 & 5) and second degree robbery (§§ 211, 212.5, subd. (c), counts 2 & 4) of both the La Canasta Liquor and Grocery store and Rite Aid store.

After denying Harrington's motion for a new trial, the trial court suspended imposition of sentence, placed Harrington on four years of formal probation and ordered him to serve six months in county jail.

## II. DISCUSSION

### A. Substantial evidence supports Rite Aid robbery conviction

Harrington argues his conviction for robbery in the Rite Aid incident must be reversed because there was insufficient evidence to show that robbery was the natural and probable consequence of his intended theft when he entered that store. There was no evidence that he or his companion armed themselves before entering the store, no evidence that Harrington--a minor--has a history of violence or other criminal behavior, and no evidence that the theft involved planning or sophistication.

#### 1. Applicable legal standards

When faced with an appeal based on a claim of insufficient evidence, we must "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence--that is, evidence which is reasonable, credible, and of solid value--such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) In so doing, we " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*Id*. at p. 576.) If we find substantial evidence, the verdict is affirmed.

5

"Section 211 defines robbery as 'the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.' Robbery is, therefore, ' " 'a species of aggravated larceny.' " ' " (*People v. Gomez* (2008) 43 Cal.4th 249, 254.) "Larceny requires the taking of another's property, with the intent to steal and carry it away. [Citation.] 'Taking,' in turn, has two aspects: (1) achieving possession of the property, known as 'caption,' and (2) carrying the property away, or 'asportation.' [Citations.] Although the slightest movement may constitute asportation [citation], the theft continues until the perpetrator has reached a place of temporary safety with the property." (*Id.* at pp. 254-255, fn. omitted.) Mere theft becomes robbery if the perpetrator, having gained possession of the property without use of force or fear, resorts to force or fear while carrying away the loot. (*Id.* at p. 255.) It is a reasonable assumption that, " 'if not prevented from doing so, the victim will attempt to reclaim his or her property.' " (*Id.* at p. 264.)

"Both aiders and abettors and direct perpetrators are principals in the commission of a crime." (*People v. Calhoun* (2007) 40 Cal.4th 398, 402.) An aider and abettor must "act with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." (*People v. Beeman* (1984) 35 Cal.3d 547, 560.)

"[A] defendant may be held criminally responsible as an accomplice not only for the crime he or she intended to aid and abet (the target crime), but also for any other crime that is the 'natural and probable consequence' of the target crime." (*People v. Prettyman* (1996) 14 Cal.4th 248, 261.) "Thus, for example, if a person aids and abets only an intended assault, but a murder results, that person may be guilty of that murder, even if unintended, if it is a natural and probable consequence of the intended assault." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) "Aider and abettor culpability under

6

the natural and probable consequences doctrine is vicarious in nature." (*People v. Chiu* (2014) 59 Cal.4th 155, 164 (*Chiu*).)

"A nontarget offense is a ' "natural and probable consequence" ' of the target offense if, judged objectively, the additional offense was reasonably foreseeable. [Citation.] The inquiry does not depend on whether the aider and abettor actually foresaw the nontarget offense. [Citation.] Rather, liability ' "is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted." ' " (*Chiu*, *supra*, 59 Cal.4th at pp. 161-162.) Ordinarily, "[r]easonable foreseeability 'is a factual issue to be resolved by the jury.' " (*Id*. at p. 162.)

"Aider and abettor liability under the natural and probable consequences doctrine does not require assistance with or actual knowledge and intent relating to the nontarget offense, nor subjective foreseeability of either that offense or the perpetrator's state of mind in committing it. [Citation.] It only requires that under all of the circumstances presented, a reasonable person in the . . . position [of the aider and abettor] would have or should have known that the nontarget offense was a reasonably foreseeable consequence of the act aided and abetted . . . ." (*Chiu*, *supra*, 59 Cal.4th at pp. 165-166.)

Harrington was convicted of robbery as an aider and abettor, but claims there was insufficient evidence to show it was reasonably foreseeable his companion would threaten Voight with harm outside the Rite Aid store. We disagree.

The jury viewed the surveillance video from inside the Rite Aid store and heard the testimony of Voight describing how Harrington and his companion entered the store, split up, walked through separate aisles, checking around to see if they were being observed, before reuniting in the liquor aisle. Voight said he overheard them asking each other if it was clear and if anyone was around before they took four bottles of liquor off the shelves and attempted to remove the security caps from the bottles. Voight saw them stick the bottles inside the waistband of their pants before leaving the store, even though

7

they knew one of the security caps could not be removed, thus making it likely the alarm would sound as they exited.

Harrington does not dispute he intended to commit a theft when he walked into the Rite Aid store. It was reasonable to assume that someone employed by Rite Aid, such as Voight, would attempt to recover the store's property if Harrington and his companion were discovered in the act of stealing it. In order to avoid detection, the two men tried to make sure they were not observed taking the bottles off the shelves, removing the security caps and placing them in their pants. However, when they realized that at least one of the security caps was still attached, the two men had to know that the alarm would likely go off as they exited the store, alerting store employees to the possibility that a theft was occurring. Regardless, Harrington and his companion exited anyway, indicating they were not concerned about the alarm and the likelihood that they might be confronted by an employee. Although Harrington may not have *explicitly* known that his companion had (or perhaps only pretended to have) a knife or that he would threaten whoever challenged them at the exit, it was reasonably foreseeable that they would need to take further action, including threatening to hurt someone, to both avoid detention and retain the stolen property. The jury had substantial evidence to support its finding that the cohort's threat of harm to Voight was a reasonably foreseeable consequence of the act of theft.

B.     *No abuse of discretion in granting motion for joinder*

Harrington's second argument is that the trial court abused its discretion in granting the prosecution's motion to join the indictment and information. He contends the evidence in the two cases was not cross-admissible and one of the cases was stronger, thus bolstering the weaker case. Again, we disagree.

"Section 954 governs joinder and severance, providing in pertinent part: 'An accusatory pleading may charge . . . two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are

8

filed in such cases in the same court, the court may order them to be consolidated . . . provided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately . . . .'  When, as defendant concedes here, the statutory requirements for joinder are satisfied, a defendant has the burden to clearly establish a potential of prejudice sufficient to warrant separate trials."  (*People v. McKinnon* (2011) 52 Cal.4th 610, 630 (*McKinnon*).)

" ' "The law prefers consolidation of charges." ' "  (*People v. Smith* (2007) 40 Cal.4th 483, 510 (*Smith*).)  "The purpose underlying [section 954] is clear:  joint trial 'ordinarily avoids the increased expenditure of funds and judicial resources which may result if the charges were to be tried in two or more separate trials.' "  (*People v. Soper* (2009) 45 Cal.4th 759, 772.)  The denial of severance or grant of consolidation is reviewed for abuse of discretion.  (*Smith*, *supra*, at p. 510.)  "To demonstrate that a denial of severance was reversible error, [the] defendant must ' "clearly establish that there [was] a substantial danger of prejudice requiring that the charges be separately tried." ' "  (*Ibid*.)

However, even if a trial court's severance ruling was correct at the time it was made, we must reverse the judgment if the defendant establishes that joinder actually resulted in " ' "gross unfairness" amounting to a denial of due process.' "  (*People v. Mendoza* (2000) 24 Cal.4th 130, 162.)  " 'Denial of a severance motion may be an abuse of discretion if the evidence related to the joined counts is not cross-admissible; if evidence relevant to some but not all of the counts is highly inflammatory; if a relatively weak case has been joined with a strong case so as to suggest a possible "spillover" effect that might affect the outcome; or one of the charges carries the death penalty.' "  (*McKinnon*, *supra*, 52 Cal.4th at p. 630.)

Here, the court granted the People's motion to join two cases in which Harrington was charged with second degree burglary and second degree robbery.  Both cases

9

involved similar factual scenarios in which Harrington, accompanied by one or more accomplices, entered a store and stole bottles of liquor. The victims in both cases testified as to what they observed and surveillance video from both stores showed Harrington and his companions taking the bottles and exiting without paying. Neither case was demonstrably stronger or weaker than the other.

In addition, there was nothing particularly inflammatory about either case. In the La Canasta store robbery, Dhillon grabbed at the bottles and was able to recover some of his property. In the Rite Aid store robbery, Voight asked Harrington to return the property but promptly stood aside when Harrington's companion threatened to hurt him with a knife. There was no actual violence employed, other than perhaps a brief tug-of-war with Dhillon. No weapons were displayed, let alone used, nor was anyone injured in either incident.

Under the circumstances, the trial court did not abuse its discretion in joining the indictment and information, and Harrington has failed to show that his due process rights were violated by that joinder.

### C. *No instructional error*

Harrington argues the trial court was obliged to sua sponte instruct the jury it could find him guilty of a lesser theft offense if they could not agree he was liable for robbery as an aider and abettor under the natural and probable consequences doctrine. The jury's repeated questions regarding the Rite Aid incident demonstrated their confusion about how to apply the facts to the charges.

#### 1. *Relevant factual and procedural background*

Following the close of evidence, the trial court instructed the jury on the elements of robbery (CALCRIM No. 1600), as well as aider and abettor liability (CALCRIM Nos. 400, 401). The jury was also instructed on the lesser included target theft offenses.

With respect to aider and abettor liability, the jury was instructed on the doctrine of natural and probable consequences as follows: "Before you may decide whether the

10

defendant is guilty of robbery, you must decide whether he is guilty of theft. [¶] To prove that the defendant is guilty of robbery, the People must prove that: [¶] 1. The defendant is guilty of theft; [¶] 2. During the commission of theft, a co-participant in that theft committed the crime of robbery; [¶] AND [¶] 3. Under all of the circumstances, a reasonable person in the defendant's position would have known that the commission of the robbery was a natural and probable consequence of the commission of the theft. [¶] A co-participant in a crime is the perpetrator or anyone who aided and abetted the perpetrator. It does not include a victim or innocent bystander. [¶] A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence. If the robbery was committed for a reason independent of the common plan to commit the theft, then the commission of robbery was not a natural and probable consequence of theft. [¶] . . . [¶] The People are alleging that the defendant originally intended to aid and abet theft. [¶] If you decide that the defendant aided and abetted one of these crimes and that robbery was a natural and probable consequence of that crime, the defendant is guilty of robbery." The jury was also instructed, pursuant to CALCRIM No. 1603, that "To be guilty of robbery as an aider and abettor, the defendant must have formed the intent to aid and abet the commission of the robbery before or while a perpetrator carried away the property to a place of temporary safety. [¶] A perpetrator has reached a place of temporary safety with the property if he or she has successfully escaped from the scene, is no longer being pursued, and has unchallenged possession of the property."

During deliberations, the jury asked to review the surveillance videos from both the La Canasta and Rite Aid incidents and submitted questions regarding the intent element of burglary. The jury subsequently indicated it had reached a verdict on the charges related to the theft from La Canasta but could not agree on the two counts charged in connection with the theft from Rite Aid. The jurors requested a readback of

11

Voight's testimony and asked to see the surveillance video again. The jury also submitted five further questions, three of which related to burglary and two of which related to robbery. The two robbery-related questions were: "Definition of force and fear" and "At what point is the property considered taken against will."

In response, the trial court orally referred the jury to the instructions already given, specifically, CALCRIM Nos. 101, 200, 3550 and 3551. The jury retired to deliberate further and did not submit any more questions before returning with its verdicts.

### 2. Standard of review

In deciding whether instructional error occurred, we "assume that jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." (*People v. Mills* (1991) 1 Cal.App.4th 898, 918.) When the evidence raises a question as to whether all of the elements of the charged offense are present and there is evidence that would justify a conviction of a lesser offense, the trial court has a sua sponte duty to instruct on the lesser included offense. (*People v. Cooper* (1991) 53 Cal.3d 771, 827.) Failure to do so denies a defendant his "constitutional right to have the jury determine every material issue presented by the evidence." (*People v. Sedeno* (1974) 10 Cal.3d 703, 720, overruled or disapproved on other grounds in *People v. Blakeley* (2000) 23 Cal.4th 82, 89; *People v. Breverman* (1998) 19 Cal.4th 142, 163, fn. 10; and *People v. Flannel* (1979) 25 Cal.3d 668, 684, fn. 12.)

Errors in jury instructions are reviewed under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*People v. Breverman*, *supra*, 19 Cal.4th at pp. 172-178.) Therefore, an error requires reversal only where "an examination of the entire record establishes a reasonable probability that the error affected the outcome." (*Id.* at p. 165, citing *People v. Watson*, *supra*, at p. 836 & Cal. Const., art. VI, § 13.) " '[M]isdirection of the jury, including incorrect, ambiguous, conflicting, or wrongly omitted instructions that do not amount to federal constitutional error are reviewed under the harmless error standard articulated' in *Watson*." (*People v. Larsen* (2012) 205 Cal.App.4th 810, 830.)

12

*3.* *Analysis*

We find no error in the trial court's handling of the jury's questions and find it was under no duty to instruct the jury it could find him guilty of a lesser included offense if it could not agree on the charge of robbery of the Rite Aid store. The questions submitted by the jury involved the definition of force and fear as well as the timing of when property is considered to be taken against the owner's will. The jury did not ask any questions regarding the natural and probable consequences doctrine and we must presume it was not confused about that concept.

Furthermore, the jury was given CALCRIM No. 1800 which instructed that grand theft was a lesser included offense of robbery and that petty theft was a lesser included offense of grand theft. The jury was also instructed if it found Harrington not guilty of the greater charged offense, such as robbery, it could still find him guilty of the lesser included offense of theft. (CALCRIM No. 3518.) These instructions were not as specific as Harrington claims was necessary, but their clear import was that if the jury could not agree that Harrington was guilty of robbery, it was empowered to consider finding him guilty of a lesser included offense. The trial court was not required to provide a pinpoint instruction specifically referencing aider and abettor liability.

*D.* *Counsel was not ineffective for failing to request the unnecessary pinpoint instruction*

Harrington's final argument is that his trial counsel was ineffective for failing to request the pinpoint instruction discussed above. We find no merit in this argument.

"To establish constitutionally inadequate representation, a defendant must demonstrate that (1) counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's representation subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the

13

defendant." (*People v. Mitcham* (1992) 1 Cal.4th 1027, 1057-1058; see *Strickland v. Washington* (1984) 466 U.S. 668, 687-696.)

Our review of a claim of ineffective assistance of counsel is highly deferential; we must make every effort to avoid the distorting effects of hindsight and to evaluate the challenged conduct from counsel's perspective at the time. (*In re Jones* (1996) 13 Cal.4th 552, 561; *Strickland v. Washington*, *supra*, 466 U.S. at p. 689.) A court must indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance. (*Strickland v. Washington*, *supra*, at p. 689; *People v. Hart* (1999) 20 Cal.4th 546.)

As to the prejudice prong, "[t]he United States Supreme Court [has] explained that this second prong of the *Strickland* test is not solely one of outcome determination. Instead, the question is 'whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.' " (*In re Harris* (1993) 5 Cal.4th 813, 833.) A defendant must prove prejudice that is a " 'demonstrable reality,' not simply speculation." (*People v. Williams* (1988) 44 Cal.3d 883, 937; *People v. Fairbank* (1997) 16 Cal.4th 1223, 1241.)

As discussed above, the jury's questions did not indicate any confusion regarding the natural and probable consequences doctrine of aider and abettor liability. Since the trial court had no sua sponte duty to proffer this pinpoint instruction, and the instructions given were adequate to apprise the jury of their ability to find Harrington guilty of a lesser included offense if it found him not guilty of robbery, Harrington's counsel was not ineffective for failing to request that instruction. (See *People v. Ochoa* (1998) 19 Cal.4th 353, 463 ["Representation does not become deficient for failing to make meritless objections."].)

## III.    DISPOSITION

The judgment is affirmed.

14

_____
Premo, J.

WE CONCUR:


_____
Rushing, P.J.



_____
Elia, J.